THE PEOPLE ex rel. HIRAM SINKLER, Respondent, *v.* IRVING C. TERRY, Superintendent, etc., Appellant.

Where a statute is susceptible of two constructions, both equally reasonable, one of which will render it valid, the other void, the courts will adopt the former.

A statute, to be held unconstitutional, must be plainly at war with the fundamental law.

The state Constitution permits the establishment in villages of a court with inferior and local jurisdiction (Art. 6, § 19), and a statutory provision authorizing the election of a judicial officer, having such a jurisdiction, although he be named therein a justice of the peace is valid.

*It seems* that such a legislative power existed prior to the amendment of the judiciary article of the Constitution in 1870, although there was no positive grant of the power.

The provision of the charter of the village of Canton (Chap. 192, Laws of 1845, as amended by chap. 70, Laws of 1859, and chap. 263, Laws of 1870), providing for the election of a justice of the peace and vesting him with "the usual powers of justices of the peace of towns in relation to crimes and misdemeanors," etc., was intended only to confer jurisdiction limited to the village; the clause giving him the powers of justices of the peace of towns is descriptive simply of the character of that jurisdiction as thus limited, and although the officer is called a justice of the peace, he is not the officer named as such in the Constitution, and whose election is therein provided for. (Art. 6, § 18.)

The court, therefore, is a local and inferior court, and the provision creating it is constitutional.

In proceedings by *habeas corpus* to inquire into the cause of the detention of the relator, it appeared that he was confined under a judgment rendered by one S., as justice of the peace of said village, convicting relator

of an assault committed within the village limits. The official canvass of the ballots of the village election showed that S. received a majority of the votes "For Justice." To the official canvass were affixed ten different ballots; two of them showed that the vote for judicial officer was "For Police Justice;" others designated no judicial officers and named no candidate thereon. It did not appear that no ballots were cast for S. "For Justice of the Peace," or that the ballots affixed to the canvass were all of the different kinds of ballots cast. One of the electors testified that he voted for S. for police justice, supposing that was the legal designation of the office created by the charter. Immediately after the election the village clerk made a certificate that S. was duly elected "justice of the peace." On the same day he took the oath of office, and gave a bond as such officer. It also appeared that S. was reputed to be justice of the peace for the village, and that he acted and was acting as such at the time of the conviction of the relator. *Held,* the facts sufficiently established that S. was an officer *de facto.*

A criminal seeking to escape punishment on the ground that the person acting as a magistrate, under whose judgment he is imprisoned, was not elected because of some alleged technical defect in ballots, although he received a majority of all the votes, will be held to strict proof of all the material facts.

*People ex rel. Sinkler* v. *Terry* (42 Hun, 273) reversed.

(Argued November 29, 1887; decided January 17, 1888.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, rendered September 17, 1886, which affirmed an order of Special Term, adjudging an order of commitment signed by Henry E. Seaver, as justice of the peace of the village of Canton, under which order the relator was imprisoned in the Onondaga County Penitentiary, to be void, and directing that said relator be discharged. (Reported below, 42 Hun, 273.)

These proceedings were by *habeas corpus* to inquire into the cause of such imprisonment.

It appeared that the relator was arrested and brought before said Seaver on a charge of assault in the third degree; he pleaded guilty and was sentenced to be imprisoned in said penitentiary for four months.

The further material facts are stated in the opinion.

*Ledyard P. Hale* for appellant. It was error for the justice to inquire into the title of the magistrate. It was enough

that he was a *de facto* justice of the peace, acting under color
of office. His title could be tried only in an action in the
nature of *quo warranto*. (*Wilcox* v. *Smith*, 5 Wend. 231,
233; *People* v. *White*, 24 id. 520, 539; *Re Walker*, 3 Barb.
162, 166; *People* v. *Cook*, 14 id. 259, 285; affirmed in 8 N. Y.
67; *People* v. *Albertson*, 8 How. Pr. 363; *People ex rel.
Bush* v. *Thornton*, 25 Hun, 456, 460; *Cronin* v. *Stoddard*,
97 N. Y. 271, 274; *Morrison* v. *Sayre*, 40 Hun, 465; *People
ex rel. Sinkler* v. *Terry*, 42 id. 273; § 2, chap. 263, Laws of
1870; *Hadley* v. *Mayor, etc., of Albany*, 33 N. Y. 603;
McCrary on Elect. § 221.) The ballots cast for "police justice"
were properly counted for " justice of the peace." (*People ex
rel. Cummins* v. *McManus*, 22 How. Pr. 25; *Geraty* v. *Reid*,
78 N. Y. 64, 66; *Sill* v. *Village of Corning*, 15 id. 297, 306;
*R. R. Co.* v. *Bearss*, 39 Ind. 598, 600, 604; *Cattell* v. *Lowry*,
45 Ia. 478.) The relator is not in position to raise the point
that the act attempts to give the justice the same territorial
jurisdiction as that given to justices of the peace of the town
of Canton, having expressly admitted that the offense of which
he pleaded guilty was committed within the corporation limits
of the village of Canton. (*Village of Deposit* v. *Vail*, 5 Hun,
310, 314, 316.) The several acts relating to the justice of the
peace of the village of Canton are constitutional and valid;
they do not attempt to create an additional justice of the peace
for the electors of the town, on the contrary, they provide for
" an inferior local court" for the village of Canton. (*Village
of Deposit* v. *Vail*, 5 Hun, 310; *Geraty* v. *Reid*, 78 N. Y.
64, 67; Laws 1859, chap. 70; Laws 1865, chap. 545; Laws
1870, chap. 263; Laws 1873, chap. 330; Laws 1850, chap. 103;
Laws 1867, chap. 260; *Bocock* v. *Cochran*, 32 Hun, 521, 523;
*Connor* v. *Hilton*, 66 How. Pr. 144.) The court will construe
the term " justice of the peace" in the charter of the village
of Canton, in the light of the Constitution as in force at the
time that statute was adopted, and so as to uphold rather than
condemn it. (*People ex rel. White* v. *Rochester*, 11 Hun,
241, 244; *Dawson* v. *Horan*, 51 Barb. 459, 461, 464; *Geraty*
v. *Reid*, 78 N. Y. 64.) The legislature had power in 1859

to establish a local inferior court in the village of Canton. (*Sill* v. *Village of Corning*, 15 N. Y., 297 ; *Brandon* v. *Avery*, 22 id. 469, 471.) The neglect of the magistrate to add to his signature the descriptive words " of the village of Canton," did not render the commitment void or voidable. (*People ex rel. Ritterman* v. *Kelly*, 1 Abb. Pr. [N. S.] 432, 437.) The order herein is appealable, and the People are the proper parties appellant. (Code of Civ. Pro., § 190, subd 2, sub-head 6 ; id. § 192; id. 2058, 2059.) The People are entitled to a decision, though the term of the imprisonment of the relator has now expired. (*People ex rel. Eastman* v. *Seaman*, 5 Denio, 409, 414; *People* v. *N. Y. C. & H. R. R. R. Co.*, 28 Hun, 543, 559.)

*John C. Keeler* for respondent. This appeal will not lie, having been taken in the name of the People of the State of New York, and not by the superintendent of the Onondaga county penitentiary, or the district attorneys of St. Lawrence and Onondaga counties. (Laws of 1886, chap. 363 ; Burrill's Law Dic., title " Ex Rel. ; " Burrill's Law Dic., title " *Habeas Corpus ad Subjiciendum*; 3 Black. Com. 124; *People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 565 ; Const. art. 1, § 4.) It was proper to allow the relator to prove that Mr. Seaver was not elected " justice of the peace," and was not a magistrate, and that the pretended court was entirely without jurisdiction. (Code Civ. Pro. §§ 2039, 2043 ; *Ex parte Seibold*, 100 U. S. Sup. Ct. 371 ; *Ex parte Lange*, 18 Wall. 163, 166 ; *People ex rel. Fry* v. *Warden*, 100 N. Y. 24 ; *People ex rel. Tweed* v. *Liscomb*, 60 id. 565–577 ; *Craig* v. *Town of Andes*, 93 id. 411; *People ex rel. Bork* v. *Gilbert*, 96 id. 631 ; *Lambert* v. *People*, 76 id. 220 ; *People ex rel. Devoe* v. *Kelly*, 97 id. 213 ; *In re Conroy*, 54 How. Pr. 432.) Mr. Seaver was never elected a magistrate, did not go into the office under color of authority, and had no authority to commit the relator. (1 R. S. [7th ed.] 385, § 8: *People* v. *Seaman*, 5 Den. 412; *Lanbat* v. *Le Roy*, 15 Abb. [N. C,] 16 ; *People* v. *Saxton*, 22 N. Y. 311; *People* v. *Pease*, 27 id. 84; *Ex*

*parte Baker*, 11 How. Pr. 532, 533; *People ex rel. Lawrence*
v. *Brady*, 56 N. Y. 183; *People ex rel. Brown* v. *Blake*, 49
Barb. 11; *People* v. *Cassels*, 5 Hill, 168; *Wilcox* v. *Smith*,
5 Wend. 231; *Rochester, etc., R. R. Co.* v. *Clarke Nat. Bk.*,
60 Barb. 248; *People* v. *Cook*, 14 id. 259; 1 R. S. [7th ed.] 917,
§ 1.) Chapter 263 of the Laws of 1870 is unconstitutional
and void in so far as it attempts to create the office of justice
of the peace. (*Waters* v. *Langdon*, 40 Barb. 408–415;
*Geraty* v. *Reid*, 78 N. Y. 64; *Conor* v. *Hilton*, 66 How.
146; *Brandon* v. *Avery*, 22 N. Y. 469; *Dawson* v. *Horan*,
51 Barb. 465; Const. § 18, art. 6; *Wenzler* v. *People*, 58
N. Y. 523–525; *People ex rel. Smith* v. *Schillien*, 95 id. 128;
*Geraty* v. *Reid*, 78 id. 66; *Ex parte Quackenbush* 2 Hill,
369; *Sill* v. *Village of Corning*, 15 N. Y. 30.) The com-
mitment and record of conviction were void. (*Conor* v.
*Hilton*, 66 How. 146; *Geraty* v. *Reid*, 78 N. Y. 67; Code
Crim. Pro. § 152.)

PECKHAM, J. The relator claims that the section of the
act providing for the election of a judicial officer in the vil-
lage of Canton is unconstitutional, because (1), the section
does not confine the jurisdiction of the officer to the village
of Canton, and (2), if it did so confine it there is no power in
the legislature to provide for the election of a justice of the
peace in villages.

(1.) As to the first ground:

The village of Canton was originally incorporated by chap-
ter 192, of the Laws of 1845. In 1859 the charter was
amended by the passage of chapter 70 of the laws of that
year. The second section of this latter act provided that
"the officers of said village shall be five trustees  *  *  *
one justice of the peace with powers hereinafter mentioned.
*  *  * The said justice of the peace shall have all the
powers of justices of the peace elected by towns at town
meetings in relation to crimes and misdemeanors and to oaths
and acknowledgments, and also in civil actions in which all
the parties shall be residents or inhabitants of said village,

and shall hold such office for the term of four years from the first day of January next after his election." By chapter 263 of the Laws of 1870, the section above cited was amended by reducing the term of office of the justice, and as to his powers providing that he should have " the usual powers of justices of the peace of towns in relation to crimes and misdemeanors, and to oaths and acknowledgments, and also in civil actions in which all the parties shall be residents or inhabitants of said village."

Under the constitution of 1846 it was provided by article 6, section 14, that " inferior local courts of civil and criminal jurisdiction, may be established by the legislature in cities; and such courts, except for the cities of New York and Buffalo, shall have an uniform organization and jurisdiction in such cities."

While this provision was in force the village of Corning (which was incorporated under the provisions of the general act to provide for the incorporation of villages, being chapter 426 of the Laws of 1847), prosecuted one Sill before the police justice of that village for selling liquor contrary to a by-law of the village, and recovered the amount of the penalty provided for therein. Sill sued out a *certiorari* to the Supreme Court where the judgment was affirmed, and he then appealed here. He contended that the legislature had no power under the constitution to provide for the appointment of a police justice in a village with jurisdiction to try and determine civil actions; and it was argued that the article above quoted only allowed of such a provision by the legislature, in regard to cities. But this court held, DENIO, Ch. J., writing the opinion, that the legislature was not prohibited from providing for the organization of an inferior local court in a village. (*Sill* v. *Village of Corning*, 15 N. Y. 297.) This decision was reaffirmed in *Brandon* v. *Avery* (22 N. Y. 469), where it was again stated that the only limitation under the constitution of 1846, as to the jurisdiction of new magistrates to be created by the legislature in cities and villages is that it be

local and inferior.   The first case above cited was decided in
June, 1857, and the second in December, 1860.

It may be assumed, therefore, that in 1859 it was known to
the legislature that inferior local courts could be established
in villages, and it was also known that justices of the peace
with like power and authority through the whole town, as any
other justice of the peace, but to be elected by a portion only
of the electors of the town, could not constitutionally be pro-
vided for.   With such knowledge on the part of the legislature
the question is whether the language used by it in the section
of the act under consideration fairly and reasonably construed,
imports that the jurisdiction of the officer elected by the
electors of the village of Canton was to be co-extensive with
that of the justices of the peace of the town of Canton elected
under the provisions of the Constitution, in which case the
statute would be void, or whether such language did not
mean that the jurisdiction thus described and provided for
was to be exercised, and process to be served only in the
village of Canton ?   In construing a statute which is susceptible
of two constructions, one of which will render it valid and the
other void, and both are equally reasonable, it is familiar that
courts incline to and will adopt that construction which renders
the act valid, rather than the one which avoids it.   A statute
to be held unconstitutional must plainly be at war with the
fundamental law.   We think that a construction of this statute
which confines the jurisdiction of the officer and the service
of process to the limits of the village is not unreasonable or
erroneous.   The legislature clearly did not intend to pass an
unconstitutional act, or which is the same thing, provide for
the creation of an officer with jurisdiction prohibited by the
Constitution.   In the section of the act under consideration it
states who the officers of the village shall be, and names a
justice of the peace as among them, and then proceeds to
define his jurisdiction.   As this legislation is designed
exclusively for the village of Canton, and the officers named
in the act are named as officers of the village, and as the powers
and duties of all the other officers whose election is therein

provided for are to be exercised within the village, we think it highly reasonable to suppose that the duties of the justice were also to be thus exercised. The jurisdiction conferred upon him by the language used was meant to be confined to the village instead of the town of Canton. When the statute said that he should have all the powers of justices of the peace elected by towns, etc., it was descriptive of the character of that jurisdiction which was to be exercised within the village. This reasoning has added force under the statute of 1870.

The second of the two cases above cited had then been reported some years, and the presumption of knowledge of both of them by the legislature is still stronger. The language used in the act of 1870 is substantially similar to the act of 1859, and should receive the same construction.

The act, we think, when properly and reasonably construed, confines the jurisdiction of the justice to the village of Canton, and within that village, as to crimes and misdemeanors, he has the same jurisdiction that justices of the peace have in towns.

This makes the court a local one. The jurisdiction which the justice exercises is inferior to that of a justice of the peace of towns, because it is more limited in area, and also in kind in civil cases, for in those he is so limited in the exercise of his jurisdiction that both parties must be residents or inhabitants of the village. The statute thus providing for the creation of both an inferior and a local court, is not open to the first ground of objection.

(2.) As to the second ground we think the constitution does permit of the election in villages of a judicial officer with inferior and local jurisdiction, even though he be named a justice of the peace. The argument against the constitutionality of such a law is this; the Constitution (art. 6, § 18), provides for the election of justices of the peace in towns and also in cities, but does not mention villages, and hence no justice of the peace can be elected for them; and as this act does provide for the election of a justice of the peace in a village, it is therefore void.

But we think the officer named in the act, although called a justice of the peace, is not the officer named in the constitution and whose election is therein provided for. He is not an officer with the same jurisdiction as a town justice of the peace, because as already shown he is limited in the discharge of his duties to the village, and in civil cases to those where both parties are residents or inhabitants thereof; and of course he is not a justice of the peace of a city. In a city a justice of the peace may be elected with such powers and for such a term as shall be prescribed by law. Although the Constitution does provide for electing justices of the peace in towns and cities, it does not prohibit their election in villages so long as the officer thus elected by a reduced constituency is not in reality a justice of the peace of the town and exercising in all respects the same jurisdiction. As was said by DENIO, Ch. J., in *Sill* v. *Village of Corning, supra,* "the state, as to subjects of a domestic nature, is a sovereign political power, and the legislature can provide such agencies for the administration of the law and the maintenance of public order as it shall judge suitable, where no prohibition expressly made or necessarily implied is found in the Constitution."

In the case cited it was argued against the power of the legislature to provide for inferior courts in villages, because there was no positive grant of power in the Constitution, and that instrument did provide for the creation of inferior local courts of civil and criminal jurisdiction in cities (article 6, Constitution of 1846), and hence as provision for such courts was made in cities, the implication was conclusive that no such power existed in regard to villages. But the argument was not considered sound and was overthrown in the case cited. The maxim, "*expressio unius est exclusio alterius,*" was not thought applicable to the case of local tribunals established for the purpose of redressing a certain description of grievances in particular limited localities. Judge DENIO further said, in substance, that there is no provision in the Constitution which vests the judicial authority of the state in

10          THE PEOPLE ex rel. SINKLER *v.* TERRY.          [Jan.,

Opinion of the Court, per PECKHAM, J.

the courts named in the Constitution, though such language is made use of regarding the legislative power, and it was by the application of reasonable principles of construction that the courts were able to say that no tribunals fulfilling the general purposes of the constitutional courts expressly provided for, could be created. He then added what is quoted above, as to the inapplicabilty of such reasoning to local tribunals. The argument in favor of the constitutionality of the act is strengthened by a reference to the nineteenth section of article 6, which went into effect in 1870. That section says that "inferior local courts of civil and criminal jurisdiction may be established by the legislature," thus leaving out the provision in the old article (six) which limited the terms of that special grant of power to the establishment of such courts in cities ; so that now there is the express grant of power to the legislature to establish any where in the state, in the villages as well as in cities or towns, inferior and local courts.

When an inferior and local court is otherwise thus established, we do not think the act creating it is rendered void because the magistrate elected is called in the statute a justice of the peace of the village. It is not the name in such case, but the jurisdiction of the court which is material, and so long as that is inferior and local, the name given to the person who is to preside in it is not generally important, certainly not in this instance. (*People* v. *Raymond*, 37 N. Y. 428; *People* v. *Albertson*, 55 N. Y. 50.) Again, under the Constitution of 1846, the sixth article, section 17, provides for the election of justices of the peace in towns only, leaving out both cities and villages. By chapter 125 of the Laws of 1849, section 15, it was provided that the common council of Brooklyn could divide the city into two or more districts, for each of which districts a "justice of the peace" was to be elected for four years, who was to have "the same jurisdiction within said city that justices of towns have by law in respect to the towns for which they have been elected, and they shall be deemed justices of the peace of the county of Kings." Here we have the same provision regarding those justices that exists in regard

to the justices of the peace in Canton. The Constitution then in words provided only for the election of justices of the peace in towns, while the legislature was creating them for cities. The Constitution now provides for justices of the peace in towns and cities, while the legislature is said to be creating one for a village. If the justices of the peace in Brooklyn were upheld as judicial officers of a local and inferior court, we do not see why the same reasoning does not apply here. The justices of the peace elected under the Brooklyn act were declared to be valid officers whose jurisdiction was confined to the city of Brooklyn. (*Geraty* v. *Reid*, 78 N. Y. 64.) The statute in that case did in words confine the jurisdiction of the justices to the city of Brooklyn, while in the one under consideration we hold that the clear implication from the whole act confines the jurisdiction of the justice to the village of Canton.

If it be said that the Brooklyn act could be sustained under the section of the Constitution, as it then stood, providing for the erection of inferior and local courts *in cities*, it may be answered that the Constitution as it stood when the act of 1870 was passed, did not contain the provision for the establishment of inferior and local courts in cities, but the provision left out those words of limitation. The case of Sill, cited above, also shows that the power to establish a local and inferior court in villages, existed under the old article; so that there is nothing in this argument of a special power for the establishment of local and inferior courts in cities only.

We think there is no evasion of the provisions of the Constitution in either case, and that a local and inferior court established in a village for the purpose of therein redressing a certain description of grievances, is not an unconstitutional tribunal although the officer who is to preside in it is called a justice of the peace.

(3.) But the relator claims that he is entitled to his discharge even conceding the constitutionality of the act in question, and upon the ground that the magistrate who sentenced him was never elected to the office of justice of the peace and was not even a *de facto* officer.

The relator gave in evidence upon the hearing the official canvass of the ballots at the village election of officers from 1886 to 1887, showing the whole number of ballots cast, of which "for justice" Henry E. Seaver received a majority. On this official canvass were affixed ten different ballots, of which copies are set out in the return and among which were ballots for the different officers of the village including therein "for police justice, Henry E. Seaver," and also "for police justice, Almeron Z. Squires," and also ballots which designated no judicial officer and named no candidate therefor. It does not appear from this record that there were no ballots cast for Mr. Seaver " for justice of the peace of the village of Canton." The clerk of the village was called who swore that Mr. Seaver did not receive any votes for the office of justice of the peace *that he knew of.* He then stated what " the record said," that Seaver had received 162 votes for " justice." The clerk would not necessarily know all the ballots that were cast at the election, for he is not one of the canvassers, the trustee or trustees presiding at the election being the officers to make the canvass. They are to state the office for which each person shall have been voted for, but it is obvious that this certificate of canvass was of an informal character, for it states only that the office voted for was " justice," which is just as compatible with a ballot for " justice of the peace," as it is for " police justice," although two of the ballots affixed to the canvass had the office named as " police justice." But as already stated there is neither certificate nor proof that the ballots affixed to the canvass were all the different kinds of ballots that were cast.

This reasoning may be considered somewhat strict, but we think in a case like this, where a criminal endeavors to escape punishment on the allegation that the person acting as a magistrate was not elected because of some alleged technical defect in ballots, although he received a majority of all the votes, the party setting up the invalidity of the election should be held to strict proof of all the material facts. The proof on the part of the defendant showed that immediately after the election the village clerk made a certificate that Mr. Seaver

was duly elected a justice of the peace for the full term, and on the same day he took the official oath to " faithfully discharge the duties of the office of justice of the peace (corporation) according to the best of" his ability.    On the same day he gave a bond, reciting that it was given in compliance with chapter 107 of the Laws of 1878, requiring justices of the peace to give bonds, by which he obligated himself to pay over, etc., all moneys which he might receive by virtue of his office as justice of the peace, and such bond was approved by the supervisor of the town in which the village is situated.    It was then proved that Mr. Seaver was reputed to be a justice of the peace for the corporation and that he had acted as such from the time of the corporation meeting in January down to and including the conviction of the relator.    It was admitted that the offense of which he was convicted was committed within the limits of the village of Canton.    The warrant of commitment was signed by Seaver with the addition under his name " justice of the peace."    A witness called for the relator swore that he voted for Seaver at the election for the office of " police justice," and " supposed the legal designation of the office created by law was police justice."    It is not claimed that any law authorized the election of a judicial officer in the village, other than the act of 1859, as amended by the act of 1870.

Upon all these facts we think that the magistrate was a *de facto officer*.    There was no other acting magistrate, and at the election no other person than Seaver was elected to fill any judicial office ; and the evidence on the part of the relator shows that, at least one witness voted for Seaver for what he supposed was the legal designation of the office created by law.    The whole facts in the case lead to the same inference as to the belief of all voters who voted that kind of a ballot.    There was an office, judicial in its character, to be filled, and it may confidently be asserted that the electors intended to fill the office established by the statute.    After the election, and by virtue of it, and under its authority, the person receiving the highest number of votes for the only judicial

office voted for, immediately entered upon the discharge of the duties of the office mentioned and described in the statute, and his holding of the office was disputed by no one.

We think no cause for discharging the prisoner was shown, and the order discharging him should be reversed and the prisoner remanded to the custody of the superintendent, who should recover costs against the relator.

All concur, except ANDREWS, J., not voting.

Ordered accordingly.