JAMES C. BAIRD, Respondent, *v.* PETER HELFER, Appellant, Impleaded with CATHERINE HELFER.[*]

*The Municipal Court of the city of Rochester has no jurisdiction, in civil cases, beyond the city limits — objection, how presented.*

Section 19 of article 6 of the Constitution of 1846, as amended in 1869, so as to read that "Inferior local courts of civil and criminal jurisdiction may be established by the Legislature," requires that the jurisdiction which may be conferred upon the courts created thereunder be confined to the territorial limits of the city or village for which the courts are created, and by the electors of which the magistrates thereof are chosen, and the process of such courts cannot be executed outside of the limits of such city or village.

The jurisdiction of the Municipal Court of the city of Rochester, created by section 1 of chapter 196 of the Laws of 1876, does not extend, nor can its process be served, beyond the limits of that city.

It is sufficient, to present on appeal the question as to the jurisdiction of a court over a party summoned to appear before it, that he appears specially and objects to such want of jurisdiction, and such objection is not waived by his appearing generally and joining issue in the case after such objection has been overruled.

APPEAL by the defendant, Peter Helfer, from a judgment of the County Court of the county of Monroe in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 31st day of July, 1896, affirming a judgment of the Municipal Court of the city of Rochester.

---

[*] See *Ziegler* v. *Corwin* (*post*, p. 60).

*Henry J. Sullivan*, for the appellant.

*John E. Robson*, for the respondent.

ADAMS, J.:

This action was brought in the Municipal Court of the city of Rochester, and the summons therein was served upon the defendants outside of the corporate limits of that city, but in an adjoining town.

Upon the return of the summons the defendants appeared by their attorney who objected to the jurisdiction of the court, upon the ground that such process was served outside of the city of Rochester. This objection was overruled, and thereafter the defendants appeared generally and joined issue, the trial of which resulted in a judgment in favor of the plaintiff, as to the defendant Peter Helfer, and in the dismissal of the complaint as to the defendant Catherine Helfer. The defendant Peter Helfer thereupon appealed to the County Court of Monroe county, where the judgment against him was affirmed, and subsequently, from such judgment of affirmance, to this court; and the only question which the present appeal brings up for our consideration is, whether jurisdiction was obtained of the appellant, either by the service of the summons, or by his subsequent appearance in the action.

We think that, upon both principle and authority, it cannot be said that the appellant submitted himself to the process of the Municipal Court of the city of Rochester in such manner as to interfere with his right to now insist that the judgment rendered against him in that court is void for want of jurisdiction.

Upon the return day of the summons he appeared solely for the purpose of insisting that, inasmuch as the process had been served upon him outside of the territorial limits of the city of Rochester, no jurisdiction was thereby obtained of his person. When he did this, he did all that was required of him to arrest an invalid proceeding, and when that attempt proved ineffectual he was under no obligation to abandon his defense upon the merits, but, on the contrary, it was his privilege and duty to make the best defense of which he was capable. (*Dewey* v. *Greene*, 4 Den. 93; *Avery* v. *Slack*, 17 Wend. 85; *Harkness* v. *Hyde*, 98 U. S. 476; *Steamship Co.* v. *Tugman*, 106 id. 118; *Jones* v. *Jones*, 108 N. Y. 415–425.)

We come, therefore, directly to the main question in the case, which is, did the Municipal Court of the city of Rochester acquire jurisdiction of the person of the appellant by the summons issuing therefrom, which was served outside of the city of Rochester?

A careful examination of the different enactments of the Legislature of this State relating to the city of Rochester reveals the fact that this tribunal was created by chapter 196 of the Laws of 1876, section 1 of which reads as follows: "A court of civil jurisdiction, to be called and known as the 'Municipal Court of the city of Rochester,' is hereby created and established in and for said city, with the jurisdiction and powers hereinafter provided. Immediately upon the passage of this act there shall be appointed by the Governor, by and with the advice and consent of the Senate, two judges of said court, whose duties shall be to organize and hold said court in said city as hereinafter provided."

By section 5 it is provided that such court "shall have jurisdiction in all civil actions and proceedings cognizable by law in the Justice's Court of said city and in the Justices' Courts of towns, except that in an action arising on contract for the recovery of money only, said Municipal Court shall have jurisdiction when the sum claimed in the complaint does not exceed $400."

And it is further provided by section 16 that from and after the passage of the act no person shall be elected to the office of justice of the peace in said city.

By the amended charter of the city, which will be found in chapter 14 of the Laws of 1880, such court is continued as established with the jurisdiction and powers more particularly specified therein, but which it will be unnecessary to consider in this connection.

Subsequently, the provisions of chapter 19 of the Code of Civil Procedure, which relates to Courts of Justices of the Peace and proceedings therein, were made applicable to the Municipal Court of the city of Rochester; and it was declared by the Legislature that such court was to be deemed a Justice's Court, and each judge thereof a justice of the peace; and, further, that the city of Rochester was to be regarded as a town of Monroe county. (Code Civ. Proc. §§ 3226, 3227.)

It will be seen at a glance, therefore, that the Legislature of this State, by these various enactments, undoubtedly intended to create

a local inferior court in the city of Rochester, and to confer upon that tribunal practically the same powers, authority and jurisdiction as are possessed and exercised by justices of the peace in towns. Such a court was doubtless required by the necessities of a populous and growing city; and it is one which ought not to be disturbed or hampered in its operation, provided no constitutional provision has been violated in its creation. It follows, therefore, that the ultimate question to be met and decided upon this appeal is, whether or not the Legislature, in making this attempt, has exceeded the power conferred upon it by the organic law of this State. The constitutional authority for the creation of inferior courts will be found in section 19 of article VI of the Constitution of 1846, as amended in 1869, which reads as follows: "Inferior local courts of civil and criminal jurisdiction may be established by the Legislature, and except as herein otherwise provided, all judicial officers shall be elected or appointed at such times and in such manner as the Legislature may direct."

This section unquestionably furnishes ample authority for the creation by the Legislature of tribunals of inferior civil and criminal jurisdiction similar to the Municipal Court of the city of Rochester and the Police Court of the same city. But to what locality such tribunals must be limited in the exercise of their jurisdiction is quite another question. It is, however, one which has received considerable attention from the courts of this State, and the decisions which will now be adverted to must furnish a guide and authority for the conclusion to be reached in the case in hand.

In the case of *Brandon* v. *Avery* (22 N. Y. 469) it was held that it was clearly within the constitutional power of the Legislature to provide for the election of local magistrates in the villages of this State, but that the jurisdiction to be conferred upon such magistrates must be local and inferior in its nature. And the term, "inferior local courts of civil and criminal jurisdiction," as employed in the Constitution, has been defined by high authority to mean courts possessing a jurisdiction localized within the territorial limits of the city or village for which they are created, and by the electors of which the incumbents thereof are chosen. (See opinion of DWIGHT, P. J., in *People* v. *Upson*, 79 Hun, 87.)

In *Hoag* v. *Lamont* (60 N. Y. 96) Judge ALLEN, in his opinion, says that "The jurisdiction of a strictly local court   *   *   *

cannot be extended to persons and subjects without the jurisdiction," and that the Legislature could not change the character of a local court of limited territorial jurisdiction to one of general jurisdiction, with power to summon to its bar and subject to its judicial authority defendants not residents, nor served with process within the limits of its jurisdiction as a local court.

Later on the Court of Appeals had occasion to consider the precise question here presented, in giving construction to an act of the Legislature which provided for the division of the city of Brooklyn into districts, and for the election of a justice of the peace for each of such territorial divisions. Such act likewise expressly conferred upon the justices so elected the same jurisdiction as that exercised by justices of the peace in the several towns of the State, so that it was quite similar in its scope and design to the act establishing the Municipal Court of the city of Rochester. The opinion in this case was written by Chief Judge CHURCH, and he makes use of the following emphatic language, which was concurred in by the entire court, viz. : " The only authority conferred is to establish *local* and inferior courts. The jurisdiction of a *local* court must be exercised within the locality, and its process cannot be executed outside of it. Whatever power constitutional justices of the peace may possess to send their process into adjoining towns, no *local* court created under the clause referred to (Art. VI, § 19) could be vested with that power." (*Geraty* v. *Reid*, 78 N. Y. 64–67.)

The most recent authority upon this question to which our attention has been directed is that of *Pierson* v. *Fries* (decided in the second department, and reported in 3 App. Div. 418). That case arose under an act of the Legislature (Chap. 182, Laws of 1892), creating a City Court for the city of Mt. Vernon, in this State, which provided that the summons in any action brought in such court might be served at any place within the county of Westchester, in which county the city of Mt. Vernon is located. The court in disposing of the case says that the power of the Legislature respecting the jurisdiction of inferior local courts is no longer a debatable question; that such courts, by the act creating them, must be limited in the exercise of their jurisdiction to the locality where they exist, and that the provision of the act relating to the city of Mt. Vernon, which permitted the service of its process outside of the city limits,

is clearly in conflict with the provision of the Constitution authorizing the creation of inferior local courts, and is, therefore, to that extent void.

Many other authorities of like tenor might be cited in support of the appellant's contention, but those already referred to apparently furnish ample authority for his position, and make it quite clear in our opinion that, in so far as the Legislature has attempted to extend the territorial jurisdiction of the Municipal Court of the city of Rochester beyond the city limits, it has exceeded its constitutional authority, and that, consequently, such court did not obtain jurisdiction of the person of the appellant in this action.

We have reached this conclusion with no little hesitation, not by reason of any doubt which we entertain as to its correctness, but rather because of our anxiety to avoid, if possible, the consideration of the power of the Legislature to enact a given law, and the adoption of such a construction of the enactment as will render it obnoxious to the fundamental law of the State. The question presented upon this appeal seems, however, to render it absolutely necessary that it should be considered from a constitutional standpoint, and forces upon the court a duty from which it cannot shrink, however distasteful its performance may prove. (*People ex rel. Sinkler* v. *Terry,* 108 N. Y. 1; *Curtin* v. *Barton,* 139 id. 505.) Our conclusion, therefore, is that the judgment appealed from should be reversed, with costs.

All concurred.

Judgment reversed, with costs.