### PEOPLE ex rel. HOLMES v. LANE et al.

(Supreme Court, Appellate Division, Fourth Department. July 24, 1900.)

1. JUSTICES OF THE PEACE—POLICE JUSTICE—JURISDICTION—CONSTITUTIONALITY OF STATUTE—PARTIAL INVALIDITY—EFFECT.

Const. art. 6, § 17, creates the office of justice of the peace. Laws 1899, c. 34, creates the office of police justice for the town of S., and vests in him "exclusive jurisdiction to hear, try, and determine charges of misdemeanor committed within said town," and "exclusive jurisdiction to take the examination of persons charged with the commission in said town of a crime now triable by a court of special sessions." *Held* that, though the grant of exclusive jurisdiction to the police justice makes the act unconstitutional, as taking away the jurisdiction belonging to justices of the peace, yet, since the objectionable portion can be eliminated by striking out the word "exclusive," and the act remain in its integrity, that course will be adopted and the act upheld.

2. SAME.

Laws 1899, c. 34, creates the office of police justice for the town of S., and prescribes the duties of that officer, providing that he "shall have all the power and be subject to all the duties and liabilities of a justice of the peace in issuing warrants for the arrest of a person charged with the commission of crime or disorderly conduct in the county of M." It also prescribes for such court the same "powers, authorities, and jurisdiction in all criminal actions and all proceedings as justices of the peace of such town now have." *Held*, that this act does not grant a jurisdiction co-extensive with that of justices of the peace throughout the county, but grants a limited jurisdiction, which is to be exercised in the same manner as the jurisdiction of justices of the peace, and hence the act is not objectionable as interfering with the constitutional jurisdiction of the latter.

3. SAME—STATUTES—TITLE.

The title of Laws 1899, c. 34, "An act for the better administration of justice in the town of Sweden, county of Monroe," is broad enough to include the abolition of the office of police justice in the village of B., and the substitution of a like office in the town of S. in lieu thereof; and such act is therefore not in conflict with Const. art. 3, § 16, providing that the subject of an act shall be expressed in its title.

Appeal from special term, Monroe county.

Mandamus by the people of the state of New York, on the relation of Homer C. Holmes, against Cuthbert P. Lane and others, inspectors, etc., to compel defendants to reconvene and recount the ballots at an election held in the village of Brockport, and to certify the election of relator as police justice of that village. From an interlocutory judgment of the supreme court overruling relator's demurrer to defendant's return, relator appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

William Lynn, for appellant.
T. S. Dean, for respondents.

SPRING, J. The village of Brockport was incorporated pursuant to the village law, containing about 5,000 inhabitants, and comprises a part of the town of Sweden in the county of Monroe. The population of the town is about 6,000. By the original village law (title 3, c. 291, Laws 1870, as amended by section 17, c. 688, Laws 1871) the trustees of any village containing a population of 3,000 or upward may direct the election of a police justice, with "the same power and jurisdiction in criminal cases which justices of the peace now by law have." This section was amended by chapter 160, Laws 1891, fixing the population requirement for a police justice in any village at 2,000 or upward. The act of 1875 (chapter 514) applies "to any incorporated village in this state, in which no provision exists for the election of a police justice"; and chapter 308, Laws 1876, referred to by the counsel, and which provides for exclusive jurisdiction, was an amendment of the act of 1875. This could not have referred to villages within the general village act, for specific provision was therein made for the election of these officials. See, also, Code Cr. Proc. § 75, which is general in its scope. Therefore, up to 1897, police justices in villages incorporated under the general act did not possess exclusive jurisdiction in criminal cases, but executed their functions concurrently with the justices of the peace of the town in which they respectively resided. Chapter 414, Laws 1897 (which constitutes chapter 21 of the General Laws, and is a codification of the statutes relating to villages), in section 182, purports to vest the police justice of a village with exclusive jurisdiction in criminal cases committed within the village limits. Where the offense was committed outside of the village, but in the county, "including any portion of such village," the jurisdiction of the police justice is made coextensive with that of a justice of the peace in issuing warrants for arrest, but the person arrested must be taken before "a magistrate of the town in which the offense is charged to have been committed." Section 50 of this act provides expressly for the continuance of the office "in every village in which it is now established," and also vests the electors of the village with the power to abolish the office.

There was no police justice in the village of Brockport until 1896, when one Matson was duly elected to that position, and continued in its incumbency for a time, and resigned, whereupon Theodore S. Dean was duly appointed his successor, and qualified and was acting in that capacity in 1899. Some controversy arose, over the adjustment of the fees of the incumbent, in regard to the liability of the town of Sweden for a portion thereof. To prevent the recurrence of that difficulty, chapter 34, Laws 1899, was passed and became a law February 28, 1899. This act abolished the office of police justice in the village of Brockport, and in lieu thereof created the office for the town of Sweden, but required the official to maintain his office for the transaction of business in said village of Brockport. This officer was vested with "exclusive jurisdiction to hear, try, and

determine charges of misdemeanor committed within said town and triable by a court of special sessions," and also with "exclusive jurisdiction to take the examination of a person charged with the commission in said town of a crime now triable by a court of special sessions." Evidently appreciating that the vesting of "exclusive" jurisdiction in this officer was in excess of the power of the legislature, and to that extent, at least, unconstitutional, chapter 123, Laws 1899, was enacted, and became a law March 23d of that year. This act corresponds with the previous act, except that the word "exclusive" was eliminated, and another sentence for a like reason. The regular town meeting of the town of Sweden occurred on March 7, 1899. The relator in this proceeding received his party nomination for police justice at the Democratic caucus, and was opposed by a nominee of the Republican party, and their names appeared regularly upon their respective tickets. The Republican nominee received a majority of the votes, and thereafter duly qualified, and since that time has been engaged in the performance of his official duties. The annual election of said village of Brockport was held on the 21st day of March, 1899, two days before chapter 123 became a law. Prior to said election, and agreeable to the provisions of the election law, the relator obtained a certificate, duly signed, for an independent nomination for the office of police justice of the village of Brockport, and presented the same to the deputy clerk of said village, requesting that he file the same, which the latter declined to do on the ground that said office had been abolished, and the tickets voted contained no official designation and no candidate for that office. In the usual blank column of the tickets the name of the relator was written in under the designation, also in writing, "For Police Justice," and on 11 of the ballots cast at said election, which the inspectors thereat refused to count. This proceeding was thereupon commenced for the purpose of compelling said inspectors to reconvene and recount said ballots, and certify to the election of the relator as police justice of the village of Brockport.

The foundation upon which the proceeding by the relator rests for its maintenance is the hypothesis that chapter 34 of the Laws of 1899, vesting the police justice of the town of Sweden with exclusive jurisdiction, nullifies that act, and the abolition of that office for the village of Brockport, provided for in said act, falls with the residue of the same to which it is subsidiary. The office of justice of the peace is a constitutional one (Const. art. 6, § 17), and the legislature possesses no power to abridge the scope of that functionary or by indirection to supplant him by another officer. People v. Howland, 155 N. Y. 270, 49 N. E. 775, 41 L. R. A. 838. That limitation, however, does not prevent the legislature, in the exercise of its prerogative, from establishing "inferior local courts of civil and criminal jurisdiction" (Id. art. 6, § 18), even though, in the execution of their duties, such courts may act concurrently with the justices of the peace of the town, and thus in effect lessen the duties and the emoluments which would otherwise belong to the latter officials. That results necessarily from the creation of an inferior court of like authority with that of the justice. The number of the justices is

not prescribed by the constitution, but is left to the legislature to fix; and, if that body should add to the number in each town, the effect would be to abridge the revenues and duties of those already sitting. That result, however, does not impair the power of the legislature. The pith of the legislative control is that it cannot endow an inferior local court with exclusive dominion where its official functions are identical with those of the constitutional official. This would, ipso facto, oust the justice of the jurisdiction inseparably connected with his office, and thus be violative of the powers impliedly guarantied him by the constitution. He would be superseded by another officer, who would intrench upon his domain, not coincidently with him, but to his eviction. The attempt, therefore, to clothe the police justice of the town of Sweden with exclusive sway was in violation of the constitution. It was the purpose of the act to provide a police justice for the town of Sweden, evidently expecting that his duties would be chiefly discharged in the village of Brockport, where the bulk of the population of the town resided, but to include within his jurisdiction the entire town. The provision that the jurisdiction should be exclusive was an incident to the primary object of the enactment, and this is evidenced by the prompt expurgation of the vitiating part by the legislature when its attention was called to the vice in the act. The clauses pertaining to exclusive jurisdiction can be stricken out without impairing the chief scope of the law or in any wise infringing upon its usefulness. They can also be treated as surplusage, and the act remain in its integrity and subserve every purpose to the inhabitants of the town which was within its purview. Where one part of an act is unconstitutional, it does not necessarily invalidate the entire act. If the valid parts are separable from that which is unlawful, and the general purpose of the legislature can be effectuated, discarding the portion which is repugnant to the constitution, the act will be sustained. In re Village of Middletown, 82 N. Y. 196; In re Bridge Co., 148 N. Y. 540, 553, 554, 42 N. E. 1088; Duryee v. Mayor, etc., 96 N. Y. 477; Lawton v. Steele, 119 N. Y. 226–241, 23 N. E. 878, 7 L. R. A. 134; Cooley, Const. Lim. § 178. I quote from Duryee v. Mayor, etc., 96 N. Y., at page 492:

"When part only of a statute or a section is unconstitutional, that part only is void, unless the other provisions are so dependent and connected with that which is void that it cannot be presumed that the legislature would have enacted the one without the other."

The fact that both the lawful and unlawful parts of the statute are contained in the same section does not preclude the operation of this principle of elimination of the vicious portion and the retention of the residue. The test is, can that which remains be executed, and give full compass to the legislative intent? As Cooley says in his Constitutional Limitations (page 178):

"The point is not whether they are contained in the same section, for the distribution of the sections is purely artificial, but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained."

. It is the policy of the courts always to sustain and give effect to a legislative enactment, unless it plainly contravenes the fundamental law. People v. Terry, 108 N. Y. 1, 14 N. E. 815.

Again, it is urged the act is unconstitutional in that it gives jurisdiction to this local court coextensive with the justice's court throughout the entire county of Monroe. If such is the scope of the act, it is to that extent at war with the organic law, for a local court is one confined in its jurisdiction to the precise locality, and its process is ineffective beyond it. Geraty v. Reid, 78 N. Y. 64; People v. Terry, supra; Brandon v. Avery, 22 N. Y. 469. The office established is the police justice of the town of Sweden. The officer is authorized (1) to hold a court of special sessions in said town "to hear, try, and determine charges of misdemeanor committed within said town and triable by a court of special sessions"; (2) to "take the examination of a person charged with the commission in such town of a crime not triable by a court of special sessions"; (3) to try persons for disorderly conduct where the offense was committed within the town. The statute is thus far very explicit in restricting jurisdiction to the town of Sweden. It then provides that "such police justice shall have all the power and authority and be subject to all the duties and liabilities of a justice of the peace in issuing warrants for the arrest of a person charged with the commission of a crime or disorderly conduct in the county of Monroe"; that is, he must exercise his jurisdiction in the same manner within his restricted territory as a justice of the peace exercises like functions throughout the county of Monroe,—referring, not to his territorial authority, but to the character of his office and the manner of executing his duties. Curtin v. Barton, 139 N. Y. 505, 513, 34 N. E. 1093, and cases there cited. It is further provided that, if a person is arrested for an offense charged outside of the town of Sweden, the defendant shall be taken before a magistrate in the town where the offense was committed, and the papers upon which the arrest was made shall be delivered to such magistrate. This prohibits the police justice from hearing or acting upon an offense committed outside of the town of Sweden. This, also, is in restriction of authority, as a justice's court comprehends the county in its stretch, even in its criminal jurisdiction. Code Cr. Proc. § 56; Barb. Crim. Law (2d Ed.) 484 et seq. The section, further along, in defining the character of the office, prescribes "the same powers, authorities, and jurisdiction in all criminal actions and all proceedings as justices of the peace of such town now have." While the significance of these provisions is not clear, the act must be taken in its entirety, and be construed with reference to the pivotal purpose of its enactment, and that is to create a police justice in the town of Sweden.

In Curtin v. Barton, 139 N. Y. 505, 34 N. E. 1093, the legislature had established the "municipal court of the city of Syracuse," a local court with civil jurisdiction. Laws 1892, c. 342. Its twelfth section provides:

"Said court shall have the same jurisdiction over the persons of defendants as is now possessed by justices' courts of towns, pursuant to the provisions of section twenty-eight hundred and sixty-nine of the Code of Civil Procedure, and

for the purpose of conferring jurisdiction of the person the said city of Syracuse shall be deemed a town and said court a justice's court thereof."

The court interpreted this language in conjunction with the entire statute, saying (at page 513, 139 N. Y., and page 1095, 34 N. E.):

"Reading the whole act together, the intention to create a court the jurisdiction of which should be confined to the limits of Syracuse is manifest. That construction being reasonable and in favor of the validity of the statute, it should be adopted, rather than the contrary. The words of section 12 are descriptive of the character, rather than the territorial extent, of the jurisdiction. That was fixed by the general words, clearly indicating the purpose to create nothing more than a local city court. Words of the same import are to be found in other acts creating local courts, and this court has given to them the same construction."

Baird v. Helfer, 12 App. Div. 23, 42 N. Y. Supp. 484, and Ziegler v. Corwin, 12 App. Div. 60, 42 N. Y. Supp. 855, which are recent decisions by this court, are not in hostility to this position. In the statute construed in those cases there was an unmistakable attempt by the legislature to extend the jurisdiction of the municipal court of Rochester to the entire county of Monroe. There was no question of construction in either case like the present, but an enunciation of the doctrine that this endeavor was a bald excess of legislative power.

It is probable the legislature intended the police court of the town of Sweden to conform in its limitations to other courts of like character which have been frequently established throughout the state. The fact that these inferior courts are restricted to their respective localities is well settled, and it is not to be hastily assumed the legislature intended to transcend its functions by providing a court with a jurisdiction in plain excess of that permitted by the constitution. The interpretation here sought to be given is not in discord with the chief purpose of the act, and, if it can be consistently given, that course should be adopted, because, as was said in People v. Supervisors, 147 N. Y. 1, 41 N. E. 563, 30 L. R. A. 74 (at page 16, 147 N. Y., page 566, 41 N. E., and page 78, 30 L. R. A.):

"A statute can be declared unconstitutional only when it can be shown beyond a reasonable doubt that it conflicts with the fundamental law; and until every reasonable mode of reconciliation of the statute with the constitution has been resorted to, and reconciliation has been found impossible, the statute will be upheld."

If, however, this be regarded a strained construction of this section, then the objectionable clauses can be stricken out without doing violence to the main design of this legislation. The expunging of whatever may extend the authority of the court beyond its territorial dominion would still retain the court in its efficiency, restricted, as every local court is, to the locality for which it was provided.

It is urged that the act is in contravention of section 16, art. 3, of the constitution, which is that "no private or local bill, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title"; that is, this act abolishes the office of police justice in the village of Brockport, and establishes a like office for the town of Sweden, and its title is, "An act for the better administration of justice in the town of Sweden,

65 N.Y.S.—64

county of Monroe." The village of Brockport comprises five-sixths of the people in the entire town, and it was deemed advisable to have one official vested with criminal jurisdiction extending throughout the town. The primary purpose, as expressed in the title, was to improve the administration of justice in the town, and to accomplish that one office must be established and another flecked out. These two objects are germane to the main purpose, to wit, the improvement of the administration of justice; and that is the test in construing this section. Van Brunt v. Town of Flatbush, 128 N. Y. 50, 27 N. E. 973; Curtin v. Barton, supra. The court say in the case last cited (at page 513, 139 N. Y., and page 1095, 34 N. E.):

"The objection that the act contains more than one subject, and, therefore, violates article 3, § 16, of the constitution, is also untenable. The only ground upon which this point is based is that, whereas the general purpose of the act was to establish a local court, section 25 abolishes the office of justices of the peace in the city, and repeals certain provisions in relation to justices' courts. The general purpose of the act was to establish a local court in place of that held before by justices of the peace, with somewhat more extensive jurisdiction. The abolition of the office of justice of the peace and of the inferior tribunal called a 'justice's court,' was so connected with and pertinent to the whole scheme that it did not, within settled rules, constitute another or different subject."

The legislature established the police court of the village of Brockport and possessed the power to abolish it. Koch v. Mayor of New York, 152 N. Y. 72–80, 46 N. E. 170; Gould v. Mahaney, 39 App. Div. 426–430, 57 N. Y. Supp. 363. If like power was also given to the electors by section 50, c. 414, of the Laws of 1897, that did not abrogate the authority of the legislature. That body might vest in the electors of the village the power to terminate this office at will without devesting itself of like power. In any event, the exercise of the power by the legislature revoked the authority delegated to the electors. In Desmond v. Crane, 39 App. Div. 190, 57 N. Y. Supp. 266, the official was a justice of the peace, with jurisdiction co-ordinate with that of any other justice within the county, and the court was held not to be a "local court," within the constitutional definition. That is the turning point distinguishing that case from the present one, where the court confessedly is an inferior court.

The interlocutory judgment should be affirmed, and the writ dismissed, but without costs of this appeal, as the questions involved are novel.

So ordered. All concur.