(24 Misc. Rep. 267.)

SHAEFFER. v. STEADMAN.

(Niagara County Court. July, 1898.)

1. JUSTICES OF THE PEACE IN LOCKPORT—INFERIOR LOCAL COURTS—JURISDICTION—CONSTITUTIONAL LAW.

Laws 1865, c. 365, tit. 2, § 12, gave the city of Lockport three justices of the peace, and title 4, § 14, provided that they should have the same authority and jurisdiction as justices of towns. Const. 1846, art. 6, §§ 14, 17, provided for inferior local courts in cities and for justices in towns, but there was no provision for justices in cities. *Held*, that the officers designated as justices in Laws 1865 were not such in the constitutional or popular sense, but were officers of inferior local courts, whose processes could not be legally executed beyond the city limits.

2. SAME.

Laws 1877, c. 218, amending Laws 1865, c. 365, tit. 2, § 12, and providing that justices of the peace in the city of Lockport should have the same jurisdiction as if such city were a part of the town of Lockport, in so far as it sought to extend the jurisdiction of the local courts to the whole county was in violation of Const. 1846, art. 6, §§ 14, 17, providing for inferior local courts in cities and for justices of the peace in towns.

3. SAME.

Laws 1886, c. 120, § 283, providing for three justices of the peace in the city of Lockport, and section 76, defining their powers in the same language as the original charter (Laws 1865, c. 365), except that they were given the same territorial jurisdiction as if the city was a part of the town of Lockport, and section 277, repealing all previous acts inconsistent therewith, abolished the inferior local courts theretofore existing under the charter, and created courts of a more general jurisdiction; and under Const. 1869, art. 6, § 18, providing for justices in cities, with such powers as should be prescribed by law, the act was not unconstitutional in extending the territorial jurisdiction of justices to the whole county.

Appeal from justice court.

Action by Jesse Shaeffer against Charles Wesley Steadman. From a judgment by a justice of the peace of the city of Lockport in favor of plaintiff, defendant appeals. Affirmed.

Bradley & Merritt, for appellant.
Millar & Moyer, for respondent.

HICKEY, J. The only question presented by this appeal is one of jurisdiction. The summons was issued by a justice of the peace

of the city of Lockport, and was served in the town of Lockport, which adjoins the city. Plaintiff took judgment by default, defendant not appearing. The latter appeals. His contention here is that a justice of the peace of the city of Lockport is an officer of an inferior local court, whose process has no force beyond the city limits, and that, therefore, the judgment rendered cannot be upheld. The decision of this question involves a consideration of certain provisions of the charter of the city of Lockport and of the constitution of the state. The city was incorporated by chapter 365 of the Laws of 1865. Section 12 of title 2 provides for the election of three justices of the peace. Section 14 of title 4 provides as follows: "The justices of the peace of the said city shall have and exercise all the powers, authority and jurisdiction, and discharge all the duties and be entitled to all the fees and compensation of justices of the peace of the several towns in this state, except as modified by this act." Section 1 of title 2 provides for the election of a police justice by the electors of the city, and section 5 of title 4 confers upon him exclusive jurisdiction in all police and criminal matters therein, except that during his absence or inability to act any justice of the peace of the city is empowered to perform his duties. Section 12, above, was amended by chapter 218 of the Laws of 1877, by incorporating therein the following: "And each of the said justices of the peace shall have the same jurisdiction as if the city of Lockport constituted a part of the town of Lockport." This amendment would have been more properly made to section 14, above, than to section 12. This, however, is of no particular consequence, as the effect is the same, both being read together. By chapter 120 of the Laws of 1886 the entire city charter was revised and re-enacted. Section 283 provides for the election of three justices of the peace, and section 76 defines their powers in substantially the same language as had theretofore been employed for the purpose, except that the word "territorial" is inserted before the word "jurisdiction"; and as a consequence we find the following sentence in the section referred to: "He shall have the same territorial jurisdiction as if said city constituted a part of the town of Lockport." It will be observed that the word "territorial" appears here for the first time with reference to the justice's jurisdiction. Section 70 expressly prohibits a justice of the peace from exercising jurisdiction in criminal matters arising within the city, except during the absence or inability of the police justice. In other respects it is a substantial re-enactment of section 5 of the former charter. Section 277 provides as follows: "All the former acts and parts of acts relative to the incorporation of the city of Lockport, and all other acts or parts of acts inconsistent with this act are hereby repealed." Certain reservations are then made, which do not, however, in my opinion, affect the question now under consideration. Section 14 of article 6 of the constitution of 1846 authorizes the legislature to establish inferior local courts in the cities of the state. Section 17 of the same article provides for the election of justices of the peace in the several towns of the state. No provision is made by this constitution for the election of justices of the peace in cities. Section 19 of article 6 of the constitution of 1869 also provides for inferior local

courts to be established by the legislature. Section 18 of the same article provides for the election of justices of the peace in the several towns of the state in the same language as was employed in the constitution of 1846. This section also provides as follows: "Justices of the peace and district court justices shall be elected in the different cities in this state in such manner and with such powers and for such terms respectively as shall be prescribed by law."

Having now quoted or referred to the various constitutional and legislative provisions which can have any bearing on the question at issue, it remains to give them construction and application. The language employed by the original charter in defining the powers of the justices of the peace, for whose election it provides, is not such as to require a construction that the legislature intended to confer upon these officers other than local jurisdiction. And as there was no constitutional authority for justices of the peace in cities in 1865, when Lockport was first incorporated, it follows that the officers designated as such in the original charter were not justices of the peace in the constitutional and popular sense, but were simply officers of inferior local courts, whose process could not be legally executed beyond the city limits. Geraty v. Reid, 78 N. Y. 64; People v. Terry, 108 N. Y. 1, 14 N. E. 815. The amendment of 1877, quoted above, doubtless seeks to extend the jurisdiction of these local courts to the whole county, but in so far as this was attempted the act must be held to be unconstitutional. Ziegler v. Corwin, 12 App. Div. 60, 42 N. Y. Supp. 855, and cases there cited. This brings us down to 1886, when, as we have seen, the city charter was revised and re-enacted, and forces a consideration of the question whether the inferior local courts with which the city had been up to that time provided were then abolished, and other courts of more general jurisdiction created in their stead. That the re-enactment in question undertakes to vest the city justices with power to send their process throughout the entire county, is not open to argument. The sentence, "He shall have the same territorial jurisdiction as if said city constituted a part of the town of Lockport," settles this. Hence, unless the local courts theretofore established were abolished by the terms of the re-enactment, it is clear that the revising act itself, in so far as it seeks to invest these local courts with a sort of general jurisdiction, is unconstitutional, and appellant's contention must prevail. Ziegler v. Corwin, supra. The language of the repealing clause of the charter of 1886, quoted above, is quite free from ambiguity, and would seem to leave no room to doubt the proposition that the local courts of the old charter were abrogated by the terms of the new, and that for the purposes of this appeal, and to the end that its validity may be upheld, the latter must be regarded as an original act of incorporation, and read in the light of the constitution of 1869. Assuming this view, then, to be correct, and a new problem presents itself for solution. As the charter of 1886 provides for justices of the peace with substantially no criminal jurisdiction, but with civil jurisdiction throughout the entire county, it is plain that in this respect the new charter is unconstitutional unless authority for this new kind of court can be found in the organic law.

As we have seen, the constitution of 1869 provides for justices of the peace in the cities of the state. But the question is, what sort of court does the constitution contemplate these officers shall hold? Surely, not local courts, for their creation is provided for by the section immediately following. And to hold that the constitution was so carelessly and loosely drawn as to make provision for the same identical thing in two consecutive sections, would, it seems to me, amount to a baseless and unwarranted reflection upon the intelligence of those who framed it. Moreover, there is nothing in the language of the two sections to justify such a construction, while the designation of the officer thus provided for, a justice of the peace, argues strongly against it. Was it, then, intended that these officers should be nothing more, nothing less, than justices of the peace in towns, possessing all their powers and territorial jurisdiction, and subject to all their liabilities? If so, why is the constitution mandatory in respect to the election of justices of the peace in the towns, while it is left to the legislature to say whether such officers shall or shall not be elected in the cities of the state? And why does it fix the term of office in the one case, and commit that duty to the legislature in the other? Furthermore, the constitution does not define the powers of justices of the peace in towns, and is silent as to any authority in the legislature so to do; but as to the justices of the peace in cities it is outspoken in its grant of authority to the legislature on this point. The silence of the constitution respecting the powers of the justices of the peace in towns implies an authority in the legislature to define the same. But why was it necessary to give express authority to the legislature in this respect as to justices of the peace in cities, and why these other distinctions which have been pointed out, if there were to be no difference in the functions which these officers were to exercise? It is not easy to determine just what functions the framers of the constitution intended should be exercised by the justices of the peace in cities for whose election they provided. But, after considerable thought, I have come to the conclusion that it was intended that these officers should possess and exercise all the power and authority which their title implies, unless restricted in the exercise of such functions by the legislative act which is necessary to give them existence. In other words, I hold that a justice of the peace, elected in any city of the state, pursuant to an act of the legislature, passed since the adoption of the constitution of 1869, which does not in terms restrict his power, would possess the same jurisdiction in every respect throughout the entire county as is exercised by justices of the peace in towns. In my opinion, the language of the constitution by which it is left to the legislature to define the powers of these officers must be construed as an authority, not to extend those powers beyond, but rather to reduce them below, those exercised by justices of the peace in towns. I believe that the official title by which these city officers are designated in the constitution implies the same powers and jurisdiction as the town justices of the peace possess, unless the former are restricted in the exercise of their functions by act of the legislature. In other words, it is my opinion that, while the legislature cannot confer greater powers upon

justices of the peace in cities than those possessed by such officers in the towns, yet it may abridge the powers of the former, while it cannot of the latter, except by a general law, applicable alike to all justices of the peace in towns.    People v. Howland, 155 N. Y. 270, 49 N. E. 775. The city of Lockport, in common with most of the cities and large villages of the state, is provided with a local court, possessing criminal jurisdiction only.    It may be fairly said that the criminal law in cities and large villages is best administered by such courts, while from an economical standpoint they are of great value.    But while the advantages derived from such courts are apparent, yet still more apparent is the need for civil courts in cities with territorial jurisdiction co-extensive with that exercised by justices of the peace in towns. Without such courts, the city merchant or tradesman is put to the unfair and unjust hardship and expense of going into the country to find a court to aid him in the collection of such small claims as he may hold against nonresidents of the city.    The pressing need of such courts must have been known to the framers of the constitution of 1869, and it was doubtless to provide for such need that the provision authorizing the election of justices of the peace in cities was introduced.    Prior to that time local courts had attempted to exercise jurisdiction beyond the locality for which they were created, but the higher courts had decided against the legality of such proceedings. Under these circumstances it was to be expected that the constitution of 1869 would provide the citizens of the various cities of the state with a tribunal whose aid they could invoke in the collection of small claims against nonresident debtors.    This, I think, is just what was attempted, and the scheme, being a salutary one, should be upheld.    These views lead to an affirmance of the judgment.    The same, or what seems to be substantially the same, question was recently before the county court of Cayuga county, and the learned county judge made the same disposition of it as is made here.    Armstrong v. Kennedy, 23 Misc. Rep. 47, 51 N. Y. Supp. 509.

The judgment below is affirmed, with costs.