(38 App. Div. 262.)

SALOMON v. CORBETT et al.

(Supreme Court, Appellate Division, First Department. March 24, 1899.)

1. SALE—DELIVERY.
    There is a delivery of carriages sold where the seller leaves them in his stable, according to the buyer's direction.

2. SAME—CONTRACT.
    Under a contract for sale by plaintiff to defendant of a "phaeton for $475, a brougham for $450, a sleigh for $175, total $1,100"; defendant, on resale of phaeton, to pay plaintiff "at once $550 cash, or, on sale of the brougham, $500 cash"; "the balance of the money ($550 or $500, respectively)" to remain with defendant, and be used by plaintiff either in the purchase of carriages or the repair thereof,—there is not a sale of each vehicle separately, but of the three for $1,100; and defendant having resold the phaeton, and failed to make the payment of $550, plaintiff can recover the $1,100.

3. SAME—ACTION FOR PRICE.
    Conversion, by the seller, of goods sold, after delivery, does not prevent recovery by him of the purchase price, the buyer not having counterclaimed for the conversion.
    Van Brunt, P. J., dissenting.

Action by William Salomon against Eugene Corbett and others. Verdict was directed for plaintiff, and defendants move for a new trial on exceptions ordered to be heard in the first instance by the appellate division. Exceptions overruled.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Paul E. De Fere, for plaintiff.
Max Steinert, for defendants.

BARRETT, J. The action is for damages for the breach of a contract with respect to the purchase and sale of three vehicles. This contract is embodied in a letter from the plaintiff to the defendants, which reads as follows:

"104 East 37th Street, New York, May 9th, 1894.

"Messrs. Corbett & McAuliffe—Dear Sirs: I have sold you a spider phaeton for $475, a brougham for $450, a sleigh for $175, total $1,100, with the understanding that upon a resale by you of the spider phaeton you are to pay me

at once $550 cash, or on sale of the brougham $500 cash; the balance of the money ($550 or $500 cash, respectively) to remain with you, and be used up either in the purchase by me of carriages or repairs thereof. In case you shall not have sold either the phaeton or the brougham in time to give me a check on or before May 16th, you will please, when the payment is to be made, make it for my account to Speyer & Company, Mills Building.

"Please acknowledge correctness of this and oblige,

"Yours, truly,                                    W. Salomon."

It is averred in the complaint and admitted in the answer that the plaintiff delivered to the defendants one of these vehicles,—the phaeton. It is also averred that the plaintiff tendered to the defendants the other two vehicles, but that the defendants refused to receive, accept, or pay for them, and refused to further execute the agreement, or to fulfill the terms and conditions thereof. This averment is denied in the answer. Upon the trial the plaintiff proved that he did more than tender the two other vehicles; he, in fact, delivered them. His coachman testified without contradiction that, when the contract was made, Corbett asked him "to leave the carriage at the plaintiff's stable until the plaintiff's lease expired," and they were accordingly left there. Corbett testified that when he received the letter which constitutes the contract he called on the plaintiff, and the latter informed him that he could use the stable until such time as he (Corbett) eventually could take the carriages to his shop. There was thus, in effect, a delivery of the carriages under the contract. They remained thereafter in the plaintiff's stable as the defendants' property, the plaintiff being but a gratuitous bailee thereof. The evidence on the latter head was introduced without objection. No point was made of a variance between the allegations of the complaint and the proofs. The case was tried upon these proofs, and determined upon their legal effect. The only point made by the defendants was that the plaintiff had failed to prove a cause of action. The transactions referred to occurred in May, 1894, and the vehicles remained in the plaintiff's stable until July, 1894, when the defendants removed the spider phaeton, which they had sold to one Bishop. Upon this latter sale the defendants became bound under the contract to pay the plaintiff "at once $550 cash." They failed to make this payment. It was not until the 16th of the following October that they made any payment, and they then paid but $300.80 upon account. That, in fact, is all they have ever paid. They were told by the plaintiff's agents that they could have the other two vehicles when they paid the balance of the $550. After many unavailing requests for this balance, the plaintiff sold these other two vehicles, realizing as the net proceeds of the sale $186.75. He credited the defendants with the latter sum on account of the total amount of $1,100 payable under the contract. He also credited them with $32.10 for certain repairs which they had made to some broughams of his. These two sums, with the $300.80 paid upon account of the $550, aggregate $519.65. Deducting the latter sum from the $1,100, we have a balance of $580.35. For the latter sum, with interest,—in all, $697.77,—the learned trial judge directed a verdict for the plaintiff.

There was no disputed question of fact, and the parties respectively requested a direction. Their requests were general, and specified no grounds. Whether the direction was correct depends, therefore, up-

on the proper construction of the agreement. All the vehicles having been delivered, the right to payment depended upon the terms of this agreement. That right is not affected by the plaintiff's conversion of the vehicles. The defendants interposed no counterclaim for such conversion, and they cannot well object to the credit which the plaintiff has chosen to give them as the result thereof. The contract having been performed on the plaintiff's part by the delivery of all the property, what were the rights of the respective parties thereunder with regard to payment? We think the true construction of the contract is that there was a sale of the three vehicles for $1,100. It was not a sale of each vehicle separately. It is true that the price of each vehicle is specified, but that was merely an indication of the process by which the price of $1,100 for the entire three was reached. This is plainly evidenced by the context. If the intention had been to sell each vehicle separately, it would have been quite unnecessary to add the words and figures, "Total, $1,100." It will be observed, too, that the payments upon a resale have no relation to the price of any one vehicle. If, for instance, the spider phaeton is sold, the defendants are to pay, not $475, but $550. So, if the brougham is sold, they are to pay, not $450, but $500. What, in case of any such resale and payment, is then to be done? "The balance of the money" ($550 in the one case, $600 in the other) is to remain with the defendants, and be used up either in the purchase by the plaintiff of carriages or repairs thereof. The balance of what money? Clearly, of the $1,100, less the sum so actually paid in cash. There could be no balance of the whole without payment of the part; otherwise we would make a balance out of nothing save an unfulfilled obligation to pay on account. The intention here is quite plain, as evidenced both by the letter and the spirit of the instrument. The defendants were to pay $1,100 for the three vehicles, but they were permitted to pay it in a particular way. Thus, if they sold the phaeton, and then paid $550 upon account of the $1,100, they could pay the balance of $550 in the manner indicated. So, if they sold the brougham, and then paid $550, they could pay the balance of $600 in like manner. But surely, if they sold either of these vehicles, and did not then pay the agreed sum, they were not still to have the privileges of paying the balance in the specified manner. Upon the defendants' construction, their privilege would continue notwithstanding the total breach of the agreement to pay upon a resale. They need not thereupon pay one dollar, and the plaintiff's only remedy would be to sue for the $550, or the $500, as the case might be, and to get the rest of the $1,100 in carriages or repairs. This is a preposterous view of the agreement. The balance of the $1,100 was only to remain with the defendants in case, upon a resale, they actually paid in cash "at once" the agreed sum. Failing to do that, the privilege as to the residue ceased, and the contract took its natural course. We think, therefore, that upon the defendants' failure here to pay "at once $550 cash" upon the sale by them of the phaeton, the entire sum of $1,100 became due and payable. The direction was, therefore, right, and the exceptions should be overruled, and judgment ordered in the plaintiff's favor for $697.77, with interest from the date of the trial, and costs.

All concur, except VAN BRUNT, P. J., dissenting.