CHARLES S. DARLING and REEVES DARLING, Respondents, *v.*
JOHN D. WHITE and MARY E. WHITE, Appellants.

(County Court, Broome County, April, 1910.)

Constitutional law — Provisions relating to courts and judicial officers —
Enlarging or restricting jurisdiction — Of inferior local courts.
Courts — Powers — Marine and City Courts — City Court of Bing-
hamton.

The territorial jurisdiction of the inferior local courts of the
State, created pursuant to the Constitution as it existed in 1846
and as amended in 1869, is confined within the limits of the sub-
division of the State for which the particular court was created.

Under the provisions of section 18 of article 6 of the Constitu-
tion of 1894, relating to the establishment of inferior local courts,
the Legislature is not authorized or empowered to confer upon
such a court any greater territorial jurisdiction than could have
been conferred under section 19 of article 6 of the Constitution
as it existed in 1869.

The City Court of Binghamton is an inferior local court and has
no jurisdiction over the persons of defendants who, in an action
brought therein, were served with the summons outside of the city
of Binghamton though within the county of Broome.

The amendment (L. 1902, ch. 532) to section 8 of chapter 537
of the Laws of 1899, the act creating the City Court of Bingham-
ton, and section 349 of the revised charter of said city (L. 1907.
ch. 751), by which the Legislature attempted to extend the terri-
torial jurisdiction of said City Court beyond the limits of said
city, are unconstitutional and void and said court cannot obtain
jurisdiction over the persons of defendants not served within the
city limits.

APPEAL from a judgment rendered by the City Court of
Binghamton.

E. B. Jenks, for appellant.

E. Day Clark, for respondent.

PARSONS, J.    This is an appeal from a judgment ren-
dered by the City Court of Binghamton. This action is
brought to recover upon a promissory note, dated July 16,
1908, which said note is for $100 and interest and was made

by John D. White, one of the defendants herein, and indorsed by Mary E. White, the other defendant in this action.

The plaintiffs were residents of the city of Binghamton. The defendants at the time of the commencement of the action were residents of the town of Triangle in the county of Broome. The summons herein was served upon the respective defendants in the village of Whitney Point in the town of Triangle, the latter being one of the towns comprising the county of Broome.

Upon the return day of the summons, the defendants appeared specially by E. B. Jenks, Esq., who asked that the complaint be dismissed on the ground that the court had not acquired jurisdiction of the persons of the defendants or either of them. The motion was denied, whereupon the plaintiffs' counsel caused several witnesses to be sworn. At the close of the evidence the court rendered judgment in favor of the plaintiff in the sum of $116.31.

The question to be determined here is whether or not the defendants, who were residents of the town of Triangle in this county and were served in the said town by a summons issued out of the City Court of Binghamton, are bound by the judgment rendered by such court, the defendants having in due time appeared specially and made objection that the court was without jurisdiction.

The court in question was created by chapter 337 of the Laws of 1899. The said chapter is entitled "An act to establish an inferior local court of civil and criminal jurisdiction in the city of Binghamton, to be called the ' City Court of Binghamton.' ".

Section 8 of said chapter, among other things, provides as follows: "All process and papers issued out of said City Court must be executed and served within the corporate limits of the city of Binghamton."

By chapter 532 of the Laws of 1902, section 8 of chapter 337 of the Laws of 1899 was amended so as to read in part as follows: "All process and papers issued out of said City Court may be executed and served anywhere within the county of Broome."

The charter of the city of Binghamton was revised by

chapter 751 of the Laws of 1907. Section 334 of the said chapter, among other things, provides: " The city court of Binghamton, now existing in the city of Binghamton, is hereby continued as a court of civil and criminal jurisdiction as in this act provided." Section 349 of the said *act* provides as follows: " Said court shall have the same jurisdiction over the persons of defendants as is now possessed by justices' courts of towns, pursuant to the provisions of section 2869 of the code of civil procedure, and for the purpose of conferring jurisdiction of the person the said city of Binghamton shall be deemed a town, and the said court a justices' court thereof; all process and papers issued out of said city court may be executed and served anywhere within the county of Broome."

The section of the Code of Civil Procedure above referred to, in so far as it is applicable to the case at bar, provides that "An action must be brought before a justice of the town or city wherein one of the parties resides or a justice of an adjoining town or city in the same county."

While the City Court at the time of its creation was restricted in the matter of the service of any and all process and papers issued therefrom to the corporate limits of the city of Binghamton, yet, by the subsequent provisions above referred to, it was manifestly the intention of the Legislature to confer upon the City Court of Binghamton a jurisdiction, so far as affects the persons of defendants and the service of process and papers issued out of said court, as extensive as that possessed by the justices' courts of any of the towns of the county of Broome. This being so, we are brought to a consideration of the question whether or not the Legislature exceeded its constitutional authority when it enacted the provisions last above mentioned.

The said provisions were in force at the time the summons was served upon the respective defendants in this action.

The City Court of Binghamton is an inferior local court. The only provision for the creation of such a court is found in section 18 of article 6 of the Constitution of the State of New York. The said section provides that " Inferior local

courts of civil and criminal jurisdiction may be established by the Legislature, but no inferior local court hereafter created shall be a court of record. The Legislature shall not hereafter confer upon any inferior or local court of its creation, any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon County Courts by or under this article. Except as herein otherwise provided, all judicial officers shall be elected or appointed at such times and in such manner as the Legislature may direct."

It must be conceded that, had this action been brought in County Court, the defendants could have been served with the summons therein in any town within the county.

My attention has not been called to any decision directly in point. However, there are cases which arose under certain provisions of the Constitution as it existed in 1846 and as amended in 1869 which are of much value in considering some of the provisions of section 18 of article 6 of the Constitution as amended in 1894.

Before reviewing these decisions I wish to call attention to the constitutional provisions above referred to. The Constitution of 1846 provided that " Inferior local courts of civil and criminal jurisdiction may be established by the Legislature in *cities*; and such courts, except for the cities of New York and Buffalo, shall have an uniform organization and jurisdiction in such cities." Art. 6, § 14.

In 1869 the Constitution was amended so as to read in part as follows: " Inferior local courts of civil and criminal jurisdiction may be established by the Legislature." Art. 6, § 19.

It will thus be seen that the Constitution was broadened in 1869 by striking out the words " In cities."

In the case of People v. Upson, 79 Hun, 87, the defendant was convicted in a court held by a police justice under a statute which provides, among other things, that the Courts of Special Sessions, held by the police justice of Rochester, shall have, in the first instance, exclusive jurisdiction to hear, try and determine all charges of misdemeanors committed within the county of Monroe. Dwight, P. J., in delivering

24

the opinion of the court, said: " The provision was clearly unconstitutional, because it assumed to give to the police justice of Rochester a territorial jurisdiction throughout the county of Monroe. The office in question finds its only warrant for being in that provision of the Constitution of the State which provides for the establishment by the Legislature of ' inferior local courts of civil and criminal jurisdiction.' The meaning of the term ' local courts ' is well established by the authorities. It means courts possessing a jurisdiction localized within the territorial limits of the city or village for which each is created, and by the electors of which its incumbent is chosen."

The same principle is laid down in the following cases: Brandon v. Avery, 22 N. Y. 469; Waters v. Langdon, 40 Barb. 408; Geraty v. Reid, 78 N. Y. 64; People ex rel. Sinkler v. Terry, 108 id. 1; Curtin v. Barton, 139 id. 505; Pierson v. Fries, 3 App. Div. 418; Baird v. Helfer, 12 id. 23; Ziegler v. Corwin, 12 id. 61.

In the case of Brandon v. Avery, 22 N. Y. 469, Comstock, Ch. J., said: " The act chartering the village of Ilion creates a police justice, and gives to him, within the village, the jurisdiction of a justice of the peace of the town of German Flats. The cause of action upon which this suit was brought, arose in another town within the county of Herkimer; but it was of a transitory nature, in justices' courts, and could be tried before any justice of the peace, provided the parties were regularly before him." The court, in discussing the jurisdiction of such magistrate, said: " No doubt it must be local and inferior; but, beyond that, we shall look in vain for any constitutional restraint upon the legislative power over the subject." The court further held in that case that there was a " territorial restriction which confines the jurisdiction of the police magistrate to the limits of the village." ·

In the case of Waters v. Langdon, 40 Barb. 408, the statute provided for the election of a police justice in the village of Whitesboro. It further provided that the police justice should have the same power and jurisdiction and be subject to the same duties and liabilities as justices of the peace in the town

of Whitestown.  The question was whether the police justice, created as aforesaid, was a justice of the peace of the town of Whitestown.  The court in deciding the case, among other things, stated as follows: " Regarding the Police Justice in this case as clothed with all the authority and jurisdiction as a justice of the peace of the town of Whitestown, without restriction upon his jurisdiction to issue any process which a justice of the peace of the same town might issue, and to hold courts in all respects in the same manner and with the same jurisdiction as a justice of the peace of the town of Whitestown, I think the Act in question, so far as it creates such an officer, a clear violation of the Constitution."

In Geraty v. Reid, 78 N. Y. 64, the question involved in the case was whether the justice's court of Brooklyn could have its process served outside of the city.  It was claimed that justices of the city had the same authority as the justices of the peace elected in towns to send process into an adjoining town.  The law under which the court was organized provided that the common council of the city of Brooklyn might divide the said city into two or more districts, for each of which districts a justice of the peace shall be elected for four years " who shall have the same jurisdiction in said city that justices of towns have by law in respect to the towns for which they have been elected, and they shall be deemed justices of the peace of the county of Kings."

The court in rendering its decision stated as follows: " The constitution of 1846 provided specifically for the election of Justices of the Peace in the several towns of the State, and hence it was not competent for the legislature to create that office and provide for an election in a different manner, or by any other locality.  The implied prohibition is as effectual as if it had been expressed.  The constitutional authority for creating inferior courts was provided by the following clause: 'Inferior local courts, of civil and criminal jurisdiction, may be established by the legislature in cities.' * * * The only authority conferred is to establish local and inferior courts.  The jurisdiction of a local court must be exercised within the locality, and its process cannot be executed outside of it.  Whatever power

constitutional justices of the peace may .possess to send their process into adjoining towns, no local court created under the clause referred to, could be vested with that power, and we think that the legislature did not intend by these acts to violate the constitution."

In Curtin v. Barton, 139 N. Y. 505, a judgment was obtained in the Municipal Court of Syracuse. ·One of the provisions of the statute governing the said court is as follows: " Said court shall have the same jurisdiction over the persons of defendants as is now possessed by justices' courts of towns, pursuant to the provisions of section 2869 of the Code of Civil Procedure, and for the purpose of conferring jurisdiction of the person, the said city of Syracuse shall be deemed a town and said court a justice's court thereof."

O'Brien, J., in delivering the opinion of the court at page 513, says: " The further point is made against the validity of the act that the court is not local; but its jurisdiction is extended by section 12 over adjoining towns into which .process may be sent by the terms of the act. Without inquiring whether that objection would affect the jurisdiction of the court in this case, even if the language of the section was not open to any other construction, it is sufficient to say that, reading the whole act together, the intention to create a court, the jurisdiction of which should be confined to the limits of the city of Syracuse, is manifest. That construction being reasonable and in favor of the validity of the statute, it should be adopted rather than the contrary. The words of section 12 are descriptive of the character rather than the territorial extent of the jurisdiction. That was fixed by the general words, clearly indicating the purpose to create nothing more than a local city court."

In the case of Pierson v. Fries, 3 App. Div. 418, the question considered by the court was the constitutionality of the act by which the City Court of Mount Vernon acquired jurisdiction to make the order appealed from. The court was created by act of the Legislature (Laws of 1892, chapter 182) as a local and inferior court by virtue of the power conferred by section 19 of article 6 of the Constitution in force when the act was passed, which authorized the Legis-

lature to establish inferior local courts of civil and criminal jurisdiction.

Hatch, J., in delivering the opinion of the court, says: " The act provides that the court shall have no jurisdiction of an action unless one of the parties thereto reside in the city of Mount Vernon.  Section 60 reads:  ' The summons in an action brought in the said court may be served at any place within the county of Westchester, but not elsewhere.' * * *  The power of the Legislature respecting the jurisdiction which may be conferred upon courts created under this article of the Constitution has been clearly defined, and no longer presents a debatable question.  These courts must, by the act creating them, be in fact limited in the exercise of jurisdiction to the locality where they exist.  The provisions of the act above quoted clearly exceed the legislative power in this regard as has been judicially declared many times. * * *  Under the present act the attempt is made to confer upon the court in the cases specified in the act the right to exercise power and assume jurisdiction of the action, wherever arising, subject only to the exception that one of the parties shall reside in the city of Mount Vernon, and that process shall be served within the county of Westchester. In the present case the judgment upon which the proceeding which led to the order appealed from was based was recovered upon a contract made in the county of New York between the parties hereto.  The defendant resided in the town of New Rochelle, in the county of Westchester; the summons and complaint were served upon him at the latter place; he did not appear in the action and judgment passed against him by default.  The order in supplementary proceedings, to appear and be examined, was also served upon the defendant at the same place.  It is, therefore, apparent that the City Court of Mount Vernon never acquired jurisdiction of the person of the defendant or the subject-matter of the action, and no valid judgment was ever rendered against him in this action.  The act in attempting to vest the court with power to cause its process to run into any place in the county of Westchester, and to authorize its order in supplementary proceedings to be served in like manner, is in clear conflict

with the constitutional provision, and is, therefore, to that extent void."

In Baird v. Helfer, 12 App. Div. 23, the action in this case was brought in the Municipal Court of the city of Rochester and the summons therein was served upon the defendants outside of the corporate limits of that city, but in an adjoining town. Objection was duly made that the court was without jurisdiction inasmuch as the process was served outside of the city of Rochester. Adams, J., in delivering the opinion of the court said: "We come, therefore, directly to the main question in the case, which is, did the Municipal Court of the city of Rochester acquire jurisdiction of the person of the appellant by the summons issuing therefrom which was served outside the city of Rochester? * * * This tribunal was created by chapter 196 of the Laws of 1876, section 1 of which reads as follows: 'A court of civil jurisdiction to be called and known as the Municipal Court of the city of Rochester, is hereby created and established in and for said city with the jurisdiction and powers hereinafter provided.' By section 5 it is provided that such court 'shall have jurisdiction in all civil actions and proceedings cognizable by law in the justice's court of said city and in the justices' courts of towns, except that in an action arising on contract for the recovery of money only, said Municipal Court shall have jurisdiction when the sum claimed in the complaint does not exceed $400.' Subsequently, the provisions of chapter 19 of the Code of Civil Procedure, which relates to Courts of Justices of the Peace and proceedings therein, were made applicable to the Municipal Court of the city of Rochester; and it was declared by the Legislature that such court was to be deemed a Justice's court, and each judge thereof a justice of the peace; and, further, that the city of Rochester was to be regarded as a town of Monroe County.

"It will be seen at a glance, therefore, that the Legislature of this State, by these various enactments, undoubtedly intended to create a local inferior court in the city of Rochester, and to confer upon that tribunal the same powers, authority and jurisdiction as are possessed and exercised by

justices of the peace in towns. Such a court was doubtless required by the necessities of a populous and growing city; and it is one which ought not to be disturbed or hampered in its operation, provided no constitutional provision has been violated in its creation. It follows, therefore, that the ultimate question to be met and decided upon this appeal is, whether or not the legislature, in making this attempt, has exceeded the power conferred upon it by the organic law of this State. The constitutional authority for the creation of inferior courts will be found in section 19 of article 6 of the Constitution of 1846, as amended in 1869, which reads as follows: ' Inferior local courts of civil and criminal jurisdiction may be established by the Legislature.' * * *.

" This section unquestionably furnishes ample authority for the creation by the Legislature of tribunals of inferior civil and criminal jurisdiction similar to the Municipal Court of the city of Rochester and the Police Court of the same city. But to what locality such tribunals must be limited in the exercise of their jurisdiction is quite another question. It is, however, one which has received considerable attention from the courts of this State, and the decisions which will now be adverted to must furnish a guide and authority for the conclusion to be reached in the case in hand."

After discussing several cases, the court continued:

" Many other authorities of like tenor might be cited in support of the appellant's contention, but those already referred to apparently furnish ample authority for his position, and make it quite clear in our opinion that, in so far as the Legislature has attempted to extend the territorial jurisdiction of the Municipal Court of the city of Rochester beyond the city limits, it has exceeded its constitutional authority, and that, consequently, such court did not obtain jurisdiction of the person of the appellant in this action. We have reached this conclusion with no little hesitation, not by reason of any doubt which we entertain as to its correctness, but rather because of our anxiety to avoid, if possible, the consideration of the power of the Legislature to enact a given law, and the adoption of such a construction of

the enactment as will render it obnoxious to the fundamental law of the State. The question presented upon this appeal seems, however, to render it absolutely necessary that it should be considered from a constitutional standpoint, and forces upon the court a duty from which it cannot shrink, however distasteful its performance may prove."

In Ziegler v. Corwin, 12 App. Div. 60, an action was commenced in the Municipal Court of the city of Rochester, and the defendant was served with a summons in the town of Penfield, a town in Monroe county outside of the city of Rochester. The objection was made that the Municipal Court of Rochester did not thereby acquire jurisdiction of the person, in that it was a local city court, and that its jurisdiction did not extend beyond the city of Rochester as to the person of the appellant, and that the process of that court could not be served upon the appellant outside of the city. At the time this case was considered the statutory jurisdiction of the Municipal Court of Rochester was the same as that possessed by the said court at the time the case last above mentioned was being considered.

The court, in its opinion, says: " If the provision of the Code of Civil Procedure (Section 3226) which states that the Municipal Court is to be deemed a justice's court, and each judge thereof deemed a justice of the peace, and that the city of Rochester is deemed to be a town of Monroe County, bears the construction claimed by the respondent, that the city is a town in Monroe County, and that its judges are justices of the peace of that town, with the right to send their process into every other town of the county, the same as the justices in towns outside of Rochester, it is plain that such a construction would be a violation of the articles of the Constitution. We should rather construe this section of the Code to mean that, so far as practicable, considering the authority and power vested in the justices of the towns and the judges of the City Court respectively, the proceedings in the City Court are to be assimilated to, and be governed by, the practice and laws affecting the courts of justices of the peace.

" We reach with reluctance the conclusion that that por-

DARLING *v.* WHITE. **377**

tion of the act of the Legislature in question that attempts
to give the Municipal Court of Rochester jurisdiction out-
side the limits of the city is unconstitutional and void."

In the case of Rockwell v. Raymond, 5 N. Y. Supp. 642,
a similar question was presented which arose in the City
Court of Yonkers.    The plaintiff resided in the city of
Yonkers.    The defendant resided in the town of East
Chester, a town in the county of Westchester, and was served
with the summons and complaint in the action in said town.
The court in deciding the case held that the City Court of
Yonkers acquired no jurisdiction of the defendant in this
action by the service of the summons upon him in the town
of East Chester, for the reason that the provisions of law
authorizing such service are unconstitutional and void.

The cases above cited show the law to be such that the ter-
ritorial jurisdiction of the inferior local courts of the State,
which was created pursuant to the Constitution as it ex-
isted in 1846 and as amended in 1869, must be confined
within the limits of whatever subdivision of the State the
court was created for.

Does section 18 of article 6 of the Constitution, as
adopted in 1894, authorize or empower the Legislature to
confer upon the City Court of Binghamton any greater ter-
ritorial jurisdiction than could have been conferred under
article 6 of section 19 of the Constitution, as it existed in
1869?

In the case of Worthington v. London G. & A. Co., 164
N. Y. 81, the court had occasion to consider article 6 of
section 18 of the Constitution.    Bartlett, J., in delivering
the opinion of the court, among other things, said:  " The
object of the framers of the Constitution seems very plain.
The inferior local court could be created by the legislature,
but certain limitations were placed upon this power.    The
court so created could not be a court of record, and was
clothed with a jurisdiction which confined it to locality, that
is, to county, city, town and village.

" When the judiciary article of the Constitution of 1894
was framed this matter of limitation as to locality h l been
fully construed by the courts and the convention deemed it

wise to place an additional restraint upon the legislature when defining the powers of inferior local courts, to be exercised within their territorial limits, and, hence, we have the provision of the Constitution _ already quoted, which prohibits the legislature from granting ' any greater jurisdiction in other respects than is conferred upon County Courts by or under this article.'

" It is very clear that the framers of the Constitution intended that not only should the inferior local court be strictly confined to its locality, but that the extent of its jurisdiction should be so limited that there would be no danger of powers being conferred by the legislature that might interfere with the Supreme Court in the exercise of its general jurisdiction throughout the state."

" The local court was, therefore, to have no greater jurisdiction than the County Court.

" What does this reasonably mean, in view of the manifest intention of the framers of the Constitution in drafting this limitation?   It prohibits, in effect, the creation of an inferior local court possessing greater powers and dignity than the County Court.

" The framers of the Constitution, in contemplating the creation of inferior local tribunals by the legislature and limiting its power, were not dealing with the jurisdiction of these future courts as to territory, non-resident parties defendant or foreign corporations, but as to subject-matter; they were not to have, in a general way, greater powers, importance and dignity than a County Court.   In conferring upon the Municipal Court the jurisdiction of the District Courts of the City of New York and of justices of the peace elsewhere, which had been exercised for many years by these local tribunals, the legislature did not create a local court possessing greater powers, importance and dignity, within the general provisions of the Constitution we are considering, than the County Court."

In the case of Irwin v. Metropolitan Street R. Co., 38 App. Div. 253, which was an action commenced in the Municipal Court in the city of New York, borough of Manhattan, the defense was interposed that the act establishing

the Municipal Court of the city of New York was unconstitutional. Van Brunt, P. J., after reviewing the history of constitutional and statutory provisions in reference to courts and their jurisdiction since the organization of the judicial system, and discussing the constitutional provisions of 1846 and 1869, among other things, states as follows:

" The Legislature, therefore, under these provisions of the Constitution, had the power to establish inferior local courts, unrestricted as to their jurisdiction within the locality wherein they were established; such locality, however, must correspond with one of the recognized territorial divisions of the State, namely, a county, town, village or city. Such localities, however, were not confined to those which existed at the time of the adoption of the Constitution, but the section in question was intended to be a flexible provision to meet the wants of new political communities of the kind referred to which should, from time to time, be organized according to the general plan, the court distinctly holding that new counties, towns, villages and cities might be established by the Legislature, and as a part of the local government of the new corporation, local courts might be established whose jurisdiction must be coextensive with the locality as a part of whose local government the court was established, such locality being one of the territorial divisions recognized by the Constitution.

" In 1894 a constitutional convention was held which framed a Constitution, subsequently adopted by the People, by which great changes were made in the judicial system of the State. It seems to have been the intention of the framers of that instrument to abolish all local courts having general jurisdiction at law and in equity within their locality, and to confine all such jurisdiction (except a limited jurisdiction conferred upon the County Courts) to the Supreme Court. * * *. It seems to have been their intention to allow the Legislature the same authority which they possessed under the old judiciary article of 1869, as interpreted by the decisions of the Court of Appeals, to establish inferior local courts of civil and criminal jurisdiction, and as the language contained in that judiciary article

# 380                    DARLING *v.* WHITE.

had been interpreted and it was well understood what powers would be conferred upon the Legislature by the use of that language in the new Constitution, it was therein inserted without change or amendment. In order, however, that the general scheme of the Constitution, that all unlimited original jurisdiction at law and in equity should be vested only in the Supreme Court, might not be defeated by the establishment of inferior local courts similar to those local courts which were being abolished by the provisions of the instrument they were framing, they added to the words contained in the previous Constitution limitations upon the power of the Legislature to confer jurisdiction within the localities in which the courts were situated.

"The words transferred from the old Constitution to the new contained well-understood territorial limitations. But the Legislature had power to confer unlimited jurisdiction within those territorial limits upon local courts which they might therein establish, and for the purpose of limiting its authority the provision was added that no inferior local court thereafter created should be a court of record and that the Legislature should not confer upon any inferior local court equity jurisdiction or any greater jurisdiction in other respects than was conferred upon County Courts by or under this article.

"In other words, the framers of the Constitution did not intend to permit local courts to grow up into courts of general jurisdiction even within the locality wherein they were situated. The Legislature was prohibited from establishing a local court of record, nor could it confer upon any local court of its creation any equity jurisdiction, and then, in order that it might not give such courts general jurisdiction in actions at law, the Constitution restricted the jurisdiction which might be conferred in other respects to that which was conferred upon County Courts by the instrument.

"It cannot be that after using language which was well understood and had been distinctly interpreted to give the Legislature the right to establish inferior local courts as part of a new system of government, it was intended to restrict *that* power by reference to the territorial jurisdiction con-

ferred upon County Courts, but rather to restrict their juris-
diction as to subject-matter and persons and not as to
locality."

Where the Legislature has sought to confer upon inferior
local courts the same jurisdiction as that possessed by
justices' courts of towns, it has been held that the words
conferring such authority are descriptive of the character
rather than the territorial extent of the jurisdiction. Curtin
v. Barton, 139 N. Y. 505; People ex rel. Sinkler v. Terry,
108 id. 1.

That part of article 6 of section 18 of the Constitution
as adopted in 1894 which provides that "The Legislature
shall not hereafter confer upon any inferior or local courts
of its creation any equity jurisdiction, or any greater juris-
diction in other respects than is conferred upon County
Courts by or under this article," has reference to subject-
matter rather than to territorial limitations.

If a city was made to embrace two or more counties, there
could be created therein an inferior local court, the terri-
torial jurisdiction of which could extend throughout the
limits of the city.

I am of the opinion that, in so far as the Legislature has
attempted to extend the territorial jurisdiction of the City
Court of Binghamton beyond the limits of the city, it has
exceeded its constitutional authority, and that in conse-
quence the City Court of Binghamton did not obtain juris-
diction of the persons of the appellants in this action; there-
fore, the judgment should be reversed, with costs.

Judgment reversed, with costs.