## DAVIS v. O'DAY.

(Montgomery County Court. July 30, 1912.)

1. JUSTICES OF THE PEACE (§§ 73, 74*)—MOTION FOR CHANGE OF JUSTICES—SUFFICIENCY.

A motion for a change of justices on the ground that the one before whom an action was brought was a material witness for the defendant, as authorized by Code Civ. Proc. § 3151, was supported by an affidavit stating that the defendant expected to prove by such justice that the plaintiff had, since the commencement of the action, stated to such justice that he did not have a cause of action. *Held*, that the motion was properly overruled as not stating a ground for a change, as the plaintiff may have been mistaken in his conclusion.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 236–242; Dec. Dig. §§ 73, 74.*]

2. JUSTICES OF THE PEACE (§§ 73, 74*)—CHANGE OF JUSTICES—SUFFICIENCY OF ORDER DENYING.

And, while in denying the motion for the change, the justice could not pass upon the truth of the defendant's affidavit by placing against it his own unsworn statement that it was not true, and thereby place the question beyond review, however meritorious the application, where in denying the application he stated that he was not a material witness, other statements in his order that the plaintiff never made the statement in question will be regarded as superfluous to support the order.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 236–242; Dec. Dig. §§ 73, 74.*]

3. JUSTICES OF THE PEACE (§ 84*)—APPEARANCE—WAIVER OF OBJECTIONS MADE ON SPECIAL APPEARANCE BY GENERAL APPEARANCE.

Where defendant in an action before a justice has appeared specially and his motion for a change of justices has been refused, he could without waiving his objections have appeared generally and interposed such defense on the merits as he had.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 266–278; Dec. Dig. § 84.*]

4. JUSTICES OF THE PEACE (§ 82*)—SERVICE OF PROCESS—RETURN.

A return by an officer of a summons from a justice court showing service on the defendant, but not stating where service was made, prima facie confers jurisdiction on the justice.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 262, 263; Dec. Dig. § 82.*]

5. JUSTICES OF THE PEACE (§ 81*)—JURISDICTION—CONSTITUTIONAL LAW.

Const. 1869, art. 6, § 18, which provided that justices in different cities should be elected in such manner and with such powers as should be provided by law, was in force at the time of the passage of the charter of the city of Amsterdam (Laws 1885, c. 131), which provided in section 50 that the justice of such city should have the same jurisdiction as the justices of the several towns of the state. *Held*, that a justice of such city had jurisdiction, not only in the city, but in the county as well, and service of process therefrom on a defendant within the county was sufficient.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 258–261; Dec. Dig. § 81.*]

Appeal from Justice Court.

Action by William A. Davis against Edward O'Day before a justice. From a judgment for plaintiff, defendant appeals. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Christopher J. Heffernan, of Amsterdam, for plaintiff.
Daniel G. O'Day, of Tonawanda, for defendant.

MOORE, J.  The summons was served upon the defendant at Yankee Hill Lock, in the county of Montgomery, but not in the city of Amsterdam.  Upon the return of the summons the defendant appeared specially by Daniel G. O'Day, his attorney, and objected to the jurisdiction of the court upon certain grounds, one of which was that it did not appear that the summons was served within the territorial limits of the city of Amsterdam.

The plaintiff orally complained that the defendant damaged his boat in the amount of $175.  The defendant, by his said attorney, thereupon made application to remove and continue the case before another justice on account of the justice being a material witness, and filed an affidavit made by Daniel G. O'Day, wherein he swore that he was the attorney and agent for the defendant; that issue had not been joined in the action; that Hicks B. Waldron, the justice who issued the summons and before whom the action was pending, was a necessary and material witness for defendant, without whose testimony defendant could not safely proceed to trial; that the particular facts and circumstances which defendant expected to prove by said justice were that theretofore and since the commencement of the action the plaintiff had stated to said justice, Hicks B. Waldron, that he (plaintiff) did not have a cause of action against the defendant, but that he would sue the defendant, and that he thought the defendant would pay something to the plaintiff rather than be troubled and annoyed by, or in defending, such an action; that he, plaintiff, well knew that the defendant was not indebted to plaintiff in any sum whatever; that the defendant was unable to prove such admission on the part of the plaintiff by any other person than such justice, and requested that the action be continued before another justice for trial.

Section 3151 of the Code of Civil Procedure provides that if, before an issue of fact is joined in an action or special proceeding, the defendant, or where he has not been arrested, his attorney, presents to the justice satisfactory proof by affidavit that the justice before whom the action or special proceeding is pending, is a material witness for the defendant, without whose testimony he cannot safely proceed to trial, setting forth therein the particular facts and circumstances which he expects to prove by him.  The justice must forthwith make a written order, directing the action or special proceeding to be continued before another justice of the same town or city, named in the order.

The justice denied the application, and has recorded his determination in the following language:

"Court decides that he is not a material witness on the ground stated in defendant's affidavit, viz., that plaintiff stated to justice certain facts, which said statement was never made by plaintiff to justice, in fact justice did not know and had no information from any person for what reason plaintiff's action was brought, and that plaintiff made no statement to justice of

his cause of action, or anything in relation thereto, and declines to discontinue the action or transfer the same to another justice."

The defendant thereupon tendered the amount of costs to that time and costs of transfer, which tender was refused, and the defendant then withdrew from the case.

The charter of the city of Amsterdam provides for two justices of the peace. Hicks B. Waldron was one, and Robert J. Sanson was the only remaining justice. Robert J. Sanson was counsel with Daniel G. O'Day for the defendant in this action, and appeared specially herein on the hearing November 15, 1911, the day when the motion to continue the action before another justice was made. The impropriety of requiring a party to try his case before the counsel ·of his opponent is, of course, manifest; still if, under the law, the defendant was entitled, as a matter of strict legal right, to have his ·case continued before another justice, it may be said with much force that the presiding justice did not have power to nullify the effect of the statute to avoid the impropriety.

The question that was before the justice for decision was: Did the affidavit, assuming that its contents were true, furnish satisfactory proof that the justice was a material witness, without whose testimony defendant could not safely proceed to trial? Had the court disposed of the matter by simply saying, "Court decides that he is not a material witness on the ground stated in defendant's affidavit, viz., that plaintiff stated to justice certain facts * * * and declines to discontinue the action or transfer the same to another justice"—there could be no hesitation in holding that the justice had simply decided judicially that the defendant had not furnished satisfactory proof within the meaning of the section quoted.

[1] The affidavit was made by the attorney, not by the defendant. The statute says that the affidavit may be made by the party or his attorney. No reason is given why the defendant did not make it. The facts and circumstances which the defendant expected to prove by the said justice were that the plaintiff had since the commencement of the action stated to the justice that he, the plaintiff, did not have a cause of action against the defendant, but that he would sue the defendant, and that he thought the defendant would pay something to the plaintiff rather than be troubled and annoyed by, or, in defending such an action, that he, the plaintiff, well knew that the defendant was not indebted to the plaintiff in any sum whatever. It is not alleged that this statement was made to the justice before the summons was issued. There is no imputation that the justice had improperly issued it. There is no allegation that the facts could be proven by the justice, or that the plaintiff or the justice had ever said that such statements were made, or that the defendant had ever told the affiant that he expected to prove them by the justice. No reason whatever is given as a foundation for the expectation that such alleged statements by the plaintiff could be proved by the justice. The affiant might merely have guessed at it, and still the affidavit be true. The action was for negligence, the claim being that the canal boat of the defendant had run into plaintiff's canal boat while lying at the side of

the Erie Canal. The plaintiff at the trial testified as to the ownership of the boat, its value, its condition after damaged, and cost of repairing, but gave no testimony connecting the defendant with the matter. That testimony was furnished by another witness. The affidavit does not allege as untrue a single transaction proven at the trial. Astute judges and lawyers do not always agree as to whether or not, under given circumstances, a defendant is liable for negligence; and a plaintiff might innocently say that he did not have a cause of action, and that he knew that the defendant was not indebted to him, when, in fact, his cause of action might be a good one. Evidence of what he said would, of course, go to his credibility as a witness. The justice, in recording his denial of the motion, went further, and said that the statement alleged was never made by the plaintiff to the justice, that the justice did not know and had no information from any person for what reason plaintiff's action was brought, and that the plaintiff had made no statement to the justice of his cause of action or anything relating thereto.

[2] Undoubtedly the justice did not have the right to pass upon the truthfulness of the contents of the affidavit, and determine its falsity by placing against it his own unsworn statement. If he had that right, the question would be beyond review, and a justice could always arbitrarily defeat a defendant's application, however meritorious it might be. Bronson v. Gutches, 17 App. Div. 204, 206, 45 N. Y. Supp. 487; Young v. Scott, 3 Hill, 32; Hopkins v. Cabrey, 24 Wend. 264. May it not be said that the justice passed upon the question as to whether the affidavit, assuming that the facts therein stated were true, furnished satisfactory proof that the justice was a material witness, etc., and found that it did not, and then unnecessarily recorded the further information that such statements were never made to him? The question is not free from doubt, and it is not without hesitation that the court holds that such construction of the record on appeal should be adopted.

[3] The defendant introduced no evidence whatever. Having appeared specially and raised his objections, he could, without waiving them, have appeared generally and interposed such defense as he had. Jones v. Jones, 108 N. Y. 415, 425, 15 N. E. 707, 2 Am. St. Rep. 447. He was not bound to do so, but it would have been more satisfactory if he had. The justice, acting judicially, having, as we hold, decided that the affidavit presented did not show that he was a material witness without whose testimony the defendant could not safely proceed to trial, this court should not reverse the determination simply because the justice added to his decision unnecessarily his denial of facts stated in the affidavit.

As to the service of the summons.

[4] The return of the officer who served the summons did not state where service was made upon the defendant. The defendant, appearing specially, and without offering proof upon the subject, objected to the jurisdiction of the justice upon the ground that it did not appear that the summons was served within the territorial limits of the city of Amsterdam, and that the return did not show that

the summons was served in the county of Montgomery. The return was sufficient on its face to give the justice jurisdiction, for the burden was upon the defendant to establish the fact that the summons was served without the territorial limits of the city of Amsterdam. Beach v. Baker, 25 App. Div. 9, 48 N. Y. Supp. 1042. [5] The plaintiff, however, supplemented the return of the constable by obtaining permission to file, and by filing an affidavit wherein he (the plaintiff) swore that he was present and saw the constable serve the summons upon the defendant at Yankee Hill Locks, in Montgomery county. Yankee Hill Locks, although in Montgomery county, is said not to be within the city limits, and for the purposes of this discussion will be so considered.

The question presented is: Did the justice acquire jurisdiction over the defendant? The city of Amsterdam was incorporated in the year 1885 by chapter 131 of the laws of that year. Its entire territory was cut out of the town of Amsterdam. Section 3 of the charter provided that two justices of the peace, with other officers, should be elected by the city at large.

Section 14 of the charter provided as follows:

"Each justice of the peace of the town of Amsterdam residing in the city of Amsterdam when this act takes effect, shall qualify according to law as a justice of the peace in said city, and shall continue to hold his office for the full term for which he was elected, and until his successor shall qualify and enter upon his office in the same manner in all respects, and shall possess the same powers and be subject to the same provisions as if he had been elected under this act. At the annual city election next succeeding the expiration of the term of the first two justices, and every second year thereafter, a justice of the peace shall be elected, who shall hold his office for the term of four years, commencing on the first day of January next succeeding his election, except that no successor shall be elected to succeed the two justices of the peace now in office whose terms shall last expire."

Section 50 of the charter provided as follows:

"The justices of the peace of said city shall have and exercise all the powers, authority and jurisdiction, and discharge all the duties, and be entitled to the fees and compensation of justices of the peace of the several towns in this state, except as modified by this act, and all laws applicable to justices of the peace of the several towns, and to courts held by them and appeals therefrom, and to their official acts, duties and powers, shall apply to the justices of the peace of said city, and the courts held by them, and appeals therefrom, and to their official acts, duties and powers."

The Constitution of the state of New York, as it existed in 1846 (art. 6, § 14), contained the following provision:

"Inferior local courts of civil and criminal jurisdiction may be established by the Legislature in cities; and such courts, except for the cities of New York and Buffalo, shall have an uniform organization and jurisdiction in such cities."

Thereafter the provision was amended, so that, at the time the city of Amsterdam was incorporated, the provision read as follows:

"Inferior local courts of civil and criminal jurisdiction may be established by the Legislature; and except as herein otherwise provided, all judicial officers shall be elected or appointed at such times, and in such manner as the Legislature may direct." (Art. 6, § 19.)

The provision was further amended by the Constitution of 1894, (art. 6, § 18) to read as follows:

"Inferior local courts of civil and criminal jurisdiction may be established by the Legislature, but no inferior local court hereafter created shall be a court of record. The Legislature shall not hereafter confer upon any inferior or local court of its creation, any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon county courts by or under this article. Except as herein otherwise provided, all judicial officers shall be elected or appointed at such times and in such manner as the Legislature may direct."

If the Justices' Courts of the city of Amsterdam are inferior or local courts, depending for their existence upon the provision of the Constitution above quoted, it would seem very clear that the Legislature had no power to vest them with authority to issue process to be served without the city limits. Darling v. White, 67 Misc. Rep. 366, 124 N. Y. Supp. 846 (act established "an inferior local court" in the city of Binghamton); People ex rel. Holmes v. Lane, 53 App. Div. 531, 65 N. Y. Supp. 1004; Brandon v. Avery, 22 N. Y. 469 (act created a police justice in Village of Ilion); Waters v. Langdon, 40 Barb. 408 (act created a police justice with power and jurisdiction of justices of the peace of the town); Pierson v. Fries, 3 App. Div. 418, 38 N. Y. Supp. 765 (act created a City Court in Mt. Vernon, and provided that summons might be served at any place within county of Westchester); Baird v. Helfer, 12 App. Div. 23, 42 N. Y. Supp. 484 (act created Municipal Court of Rochester and undertook to vest it with all powers and jurisdiction possessed by justices of peace of towns); People v. Upson, 79 Hun, 87, 29 N. Y. Supp. 615 (act created police justice in Rochester and assumed to give territorial jurisdiction throughout Monroe county); Curtin v. Barton, 139 N. Y. 505, 513, 34 N. E. 1093 (where question is referred to, but not passed upon).

Article 6, § 17, of the Constitution of 1846, provided that:

"The electors of the several towns shall, at their annual town meeting, and in such manner as the Legislature may direct, elect justices of the peace whose term of office shall be four years."

As the Constitution then stood, it would seem that the Legislature had no power to create Justices' Courts in cities, except under the above quoted provision relating to inferior local courts.

The Constitution was amended, however, in 1869, section 17 being made section 18, and to the above quoted provision the following was added:

"Justices of the peace and district court justices shall be elected in the different cities in this state, in such manner, and with such powers, and for such terms respectively, as shall be prescribed by law; all other judicial officers in cities, whose election or appointment is not otherwise provided for in this article, shall be chosen by the electors of cities or appointed by the local authorities thereof."

In the Constitution of 1894, the word "shall" was changed to "may," so that it now reads:

"Justices of the peace and district court justices may be elected," etc.

The amendment of 1869 vested in the Legislature power to establish in cities justices of the peace, and clothe them with all the powers and jurisdiction of justices of towns. Desmond v. Crane, 39 App. Div. 190, 57 N. Y. Supp. 266; Gould v. Mahaney, 39 App. Div. 426, 57 N. Y. Supp. 363; Lantz v. Gulpin, 44 Misc. Rep. 356, 89 N. Y. Supp. 1096; Armstrong v. Kennedy, 23 Misc. Rep. 47, 51 N. Y. Supp. 509; Shaeffer v. Steadman, 24 Misc. Rep. 267, 53 N. Y. Supp. 586.

Judge Haight, in a memorandum in Worthington v. London Guarantee & Accident Company, 164 N. Y. 81, at page 92, 58 N. E. 102, at page 106, speaking of these statutes, says:

"We have provisions establishing courts of record and then providing for justices of the peace in towns, and also for justices of the peace or district courts in cities in which the jurisdiction of the court is left to the discretion of the Legislature, which has already given to such courts jurisdiction to actions of this character. Then, and in addition to this provision, authority is given to the Legislature by section 18 to establish other local inferior courts of civil and criminal jurisdiction not limited to cities, but for the counties, towns, and villages as well, the jurisdiction of which shall not be greater than that conferred upon County Courts. My conclusion is that the Municipal Court is a district court within the city of New York authorized by section 17 of the Constitution referred to, and that it has such powers as the Legislature has or shall hereafter prescribe, and that under the charter of Greater New York it had jurisdiction of this cause of action."

The precise point involved here was not presented in that case, but the opinion of Judge Bartlett as well as the memorandum of Judge Haight are instructive. Other cases interesting to read in this connection are People v. Dooley, 69 App. Div. 513, 523, 75 N. Y. Supp. 350; Id., 171 N. Y. 74, 89, 63 N. E. 815; Sutphen v. Clark, 119 App. Div. 671, 104 N. Y. Supp. 129; People ex rel. Burby v. Howland, 155 N. Y. 270, 49 N. E. 775, 41 L. R. A. 838; Matter of Schultes, 33 App. Div. 524, 534, 54 N. Y. Supp. 34.

The justices of the peace of the city of Amsterdam were vested with all the powers and jurisdiction of justices of towns, so far as the Legislature had power to do so. The language could scarcely be more broad and comprehensive. The justices of the town of Amsterdam residing in the city when it was incorporated were continued in office for the remainder of their terms, and successors provided for, two in number. The Legislature had the power to and did vest the justices with jurisdiction to issue summons to be served anywhere within the limits of Montgomery county.

The judgment should be affirmed, with costs to the respondent, and an order may be prepared accordingly.